CUMBERLAND FARMS, INC. *v.* TOWN OF GROTON
(SC 15797)

Callahan, C. J., and Borden, Norcott, Katz and McDonald, Js.

Argued April 24—officially released November 3, 1998

*Michael A. Zizka*, with whom, on the brief, was *Everett E. Newton*, for the appellant (plaintiff).

*Raymond L. Baribeault, Jr.*, with whom, on the brief, was *James F. Brennan, Jr.*, for the appellee (defendant).

*Richard Blumenthal*, attorney general, and *Janet P. Brooks*, assistant attorney general, filed a brief for the commissioner of environmental protection as amicus curiae.

*Opinion*

CALLAHAN, C. J. The zoning board of appeals of the town of Groton (board) denied, for lack of hardship, the application of the plaintiff, Cumberland Farms, Inc., for a zoning variance. The dispositive issue in this appeal is whether the board's denial of the variance application constituted a final decision that rendered ripe for adjudication an inverse condemnation claim the plaintiff subsequently brought against the defendant, the town of Groton, based on the denial of its variance application. We conclude that it did.

The Appellate Court opinion adequately sets forth the facts and the underlying procedural history. "The relevant facts are not in dispute. As set forth in the trial court's memorandum of decision, 'the plaintiff . . . owns land with a building, other structures and improvements in Groton. The building is more than twenty years old and was used as a car repair garage and gasoline service station since before the area was zoned residential by the defendant town. Three underground gasoline storage tanks are also located on the property. The car repair use of the building was abandoned in 1979. The remainder of the building continues to be used to sell gasoline and, to a limited extent, snacks and sundries.

" 'To comply with environmental laws and regulations, the plaintiff's property requires substantial upgrading. To offset the costs of these improvements, the plaintiff applied to the [defendant's] zoning board of appeals for a variance to the zoning regulations so that the [existing] nonconforming use of the property could be expanded to include a convenience store, as well as the existing gasoline service station. The [board] denied the plaintiff's application after a hearing.' The plaintiff appealed the board's decision regarding its variance application to the Superior Court.[1] That appeal is presently pending.[2]

---

[1] "See *Cumberland Farms, Inc.* v. *Zoning Board of Appeals,* Superior Court, judicial district of New London, Docket No. CV96-0538647S." *Cumberland Farms, Inc.* v. *Groton,* 46 Conn. App. 514, 515 n.1, 699 A.2d 310 (1997).

[2] Subsequent to the Appellate Court's decision in the present case; *Cumberland Farms, Inc.* v. *Groton,* 46 Conn. App. 514, 699 A.2d 310 (1997); the Superior Court denied the plaintiff's administrative appeal. *Cumberland Farms, Inc.* v. *Groton,* Superior Court, judicial district of New London, Docket No. CV96-538647S (September 24, 1997). On November 5, 1997, the Appellate Court denied the plaintiff's application for certification to appeal from the judgment of the Superior Court denying its administrative appeal. Thus, the plaintiff's administrative appeal has now been resolved. See part II A of this opinion regarding the effect of the resolution of the plaintiff's administrative appeal on its inverse condemnation claim.

"On September 5, 1996, the plaintiff filed [a separate] amended complaint, claiming inverse condemnation of the property and seeking damages and other compensation, pursuant to the fifth and fourteenth amendments to the United States constitution, as well as article first, § 11, of the Connecticut constitution.[3] The defendant filed a motion to dismiss the plaintiff's amended complaint on the ground that the court lacked subject matter jurisdiction over the plaintiff's inverse condemnation action due to the pending appeal of the board's decision. The plaintiff filed a memorandum of law in opposition to the defendant's motion.

"On December 9, 1996, the trial court issued a twelve page memorandum of decision in which it determined that because the plaintiff submitted only one application for a variance to the defendant's zoning regulations, no final administrative decision had been made. The trial court also concluded that the plaintiff was required to exhaust its administrative remedies, through an appeal of the board's adverse decision on its variance application, before it could maintain a separate takings action. Finally, the trial court determined that because the plaintiff could have raised its takings claim in the appeal from the denial of its variance application, the prior pending action rule required that the plaintiff's inverse condemnation action be dismissed. Accordingly, the trial court granted the defendant's motion to

[3] "The fifth amendment to the United States constitution provides in relevant part: '[N]or shall private property be taken for public use, without just compensation.' The taking clause of the fifth amendment is made applicable to the states through the fourteenth amendment. See *Webb's Fabulous Pharmacies, Inc.* v. *Beckwith*, 449 U.S. 155, 160, 101 S. Ct. 446, 66 L. Ed. 2d 358 (1980); *Pennsylvania Central Transportation Co.* v. *New York City*, 438 U.S. 104, 122, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978). Article first, § 11, of the Connecticut constitution provides: 'The property of no person shall be taken for public use, without just compensation therefor.' " *Cumberland Farms, Inc.* v. *Groton*, 46 Conn. App. 514, 516 n.2, 699 A.2d 310 (1997). The complaint filed on September 5, 1996, was an amended version of an original complaint claiming an inverse condemnation.

dismiss the plaintiff's amended complaint for lack of subject matter jurisdiction." *Cumberland Farms, Inc.* v. *Groton,* 46 Conn. App. 514, 514–16, 699 A.2d 310 (1997).

The plaintiff appealed from the judgment of the trial court to the Appellate Court. On appeal, the plaintiff claimed that the trial court improperly determined that: (1) a landowner must appeal the denial of a variance to the Superior Court before it can file a taking claim under the United States and Connecticut constitutions; (2) a landowner must always submit more than one application for a variance to a zoning board of appeals for the denial of the variance to be considered an appealable "final action"; and (3) an inverse condemnation lawsuit is precluded by the "prior pending action" rule when the other action at issue is an appeal of the denial of a variance. Id., 514–15.

The Appellate Court affirmed the trial court's decision, concluding that the plaintiff's inverse condemnation action was premature because its administrative appeal from the denial of its application for a variance was not yet final and, therefore, the action was not justiciable.[4] Id., 517–19. The Appellate Court reasoned that "[u]ntil the plaintiff's underlying appeal of the board's decision has been resolved, there can be no final and authoritative determination of the type of development legally permitted on the plaintiff's property. Furthermore, because the extent of any damages sustained by the plaintiff cannot be determined until the resolution of its appeal of the board's decision, the plaintiff's inverse condemnation action is premature

---

[4] The Appellate Court concluded that because the plaintiff's claim was not ripe, it was unnecessary to address the other issues raised on appeal, including whether the prior pending action doctrine applied, and whether the plaintiff was required to submit multiple plans in order to establish finality for its taking claim. *Cumberland Farms, Inc.* v. *Groton,* supra, 46 Conn. App. 520.

and is not presently capable of resolution on the merits." Id., 519.

We granted the plaintiff's petition for certification to appeal limited to the following question: "Did the Appellate Court properly conclude that the plaintiff's claim for inverse condemnation was not ripe for review and, therefore, was properly dismissed by the trial court?" *Cumberland Farms, Inc.* v. *Groton*, 243 Conn. 936, 702 A.2d 641 (1997). In order to answer the certified question, we must resolve both the first and second issues raised in the Appellate Court; namely, whether the plaintiff's action was not ripe for adjudication because: (1) the plaintiff's administrative appeal had not been resolved; and (2) the plaintiff had failed to submit multiple plans.[5] To decide these issues, we must determine whether the board's denial of the variance application constituted a final decision that enabled the

[5] The parties have fully briefed the issues of ripeness and finality as well as the impact of our decision in *Port Clinton Associates* v. *Board of Selectmen*, 217 Conn. 588, 600, 587 A.2d 126, cert. denied, 502 U.S. 814, 112 S. Ct. 64, 116 L. Ed. 2d 39 (1991), on the resolution of this case. Because, in view of our conclusion in *Port Clinton Associates*, the issue of finality and ripeness as stated in the certified question is necessarily two-pronged, our analysis would be incomplete if we addressed only the first prong relating to completion of the plaintiff's administrative appeal. Moreover, the defendant's brief in this court is virtually identical to that filed in the Appellate Court, particularly with respect to the issues of the necessity of multiple plans and exhaustion of the administrative appeal. In the furtherance of judicial economy, therefore, we address the issue of multiple plans, notwithstanding the fact that it was not addressed by the Appellate Court. *State* v. *Brown*, 242 Conn. 445, 447, 700 A.2d 1089 (1997).

In addition, although the resolution of these ripeness issues necessarily informs the resolution of the third issue relating to the prior pending action doctrine, we need not specifically address that issue to resolve the certified question. Although courts may not necessarily be entitled to raise the issue of the prior pending action doctrine sua sponte; see *Conti* v. *Murphy*, 23 Conn. App. 174, 178, 579 A.2d 576 (1990); the parties have raised this issue in both the trial court and the Appellate Court. Moreover, both parties fully addressed the issue in their briefs to this court. Consequently, we also address that issue for reasons of judicial economy. See part III of this opinion.

plaintiff to maintain an independent inverse condemnation action against the town for an alleged unconstitutional taking without first pursuing its administrative appeal to completion. If the resolution of that inquiry is in the affirmative, the Appellate Court improperly affirmed the trial court's dismissal of the plaintiff's inverse condemnation action for lack of subject matter jurisdiction. We conclude that the inquiry should be answered affirmatively, and, therefore, reverse the judgment of the Appellate Court.

In its inverse condemnation action, the plaintiff seeks compensation for an alleged taking of its property without just compensation in violation of the fifth amendment to the United States constitution and article first, § 11, of the Connecticut constitution.[6] Specifically, the plaintiff maintains that the board's denial, pursuant to the defendant's zoning regulations, of the variance application operated to deprive the plaintiff of any economically feasible, reasonable use of its property.[7] In the plaintiff's view, the regulatory action that the plaintiff alleges constitutes a taking of its property became final at the time the board denied the variance application, and it was at that point that the plaintiff's inverse condemnation action became ripe for adjudication. According to the plaintiff, because any subsequent action by the Superior Court sustaining its administrative appeal from the board's decision would have been purely remedial, resolution of the administrative appeal was not a necessary predicate to its inverse condemnation claim.

The defendant, however, argues that the plaintiff's inverse condemnation action was not justiciable

[6] The question certified in this appeal, whether the denial of the plaintiff's variance application constitutes an appealable final action, is separate and distinct from the question of whether that denial constitutes a taking of the plaintiff's property for constitutional purposes.

[7] The plaintiff has not alleged that the regulations are facially unconstitutional.

because the plaintiff had submitted only one plan to the zoning board of appeals, and because the plaintiff's administrative appeal from the board's decision to the Superior Court pursuant to General Statutes § 8-8[8] had not been resolved.

I

The parties agree that our decision in *Port Clinton Associates* v. *Board of Selectmen*, 217 Conn. 588, 600, 587 A.2d 126, cert. denied, 502 U.S. 814, 112 S. Ct. 64, 116 L. Ed. 2d 39 (1991), is dispositive of this appeal. They diverge, however, with respect to the proper application of our holdings in *Port Clinton Associates* to these facts. A brief summary of the facts and the resolution of *Port Clinton Associates* is, therefore, appropriate.

Port Clinton Associates and Port Clinton Marina, Inc., (together Port Clinton) were the riparian owner and lessor, respectively, of three piers that extended into Clinton Harbor. The Clinton board of selectmen denied

---

[8] General Statutes § 8-8 provides in relevant part: "(a) As used in this section:

"(1) 'Aggrieved person' means a person aggrieved by a decision of a board and includes any officer, department, board or bureau of the municipality charged with enforcement of any order, requirement or decision of the board. In the case of a decision by a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, 'aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board.

"(2) 'Board' means a municipal zoning commission, planning commission, combined planning and zoning commission, zoning board of appeals or other board or commission the decision of which may be appealed pursuant to this section, or the chief elected official of a municipality, or his designee, in a hearing held pursuant to section 22a-250, whose decision may be appealed.

"(b) Except as provided in subsections (c) and (d) of this section and sections 7-147 and 7-147i, any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located. . . ."

Port Clinton's application to expand its piers on the basis of a local ordinance that required the board's permission for expansions into the harbor beyond certain established building lines. Id., 590–93.

In *Port Clinton Associates*, we stated that a property owner challenging an application of a local ordinance as constituting a taking without just compensation may not maintain its claim unless and until a final decision has been rendered by the *initial* decision maker. Id., 607. The lack of such a final decision renders the claim unripe for review, and the Superior Court is without subject matter jurisdiction for lack of a justiciable issue. Id., 604. We stated further that "[v]ariances and exceptions in Connecticut are generally granted not by the zoning commission, but by the zoning board of appeals. General Statutes § 8-6. *Thus, in many instances, a final decision by the 'initial decisionmaker,' really means a decision by the zoning board of appeals, when that body is not acting in a reviewing capacity but is exercising its power to grant variances and exceptions.*"[9] (Emphasis added.) Id., 606–607, relying on *Florentine* v. *Darien*, 142 Conn. 415, 115 A.2d 328 (1955). Consequently, where the necessity of a variance is concerned, the zoning board of appeals is typically the "initial" decision maker.

We also concluded in *Port Clinton Associates* that "a property owner need not pursue remedial procedures that merely review the propriety of the initial decisionmaker's action." *Port Clinton Associates* v. *Board of Selectmen*, supra, 217 Conn. 606. In support of this conclusion, we relied on *Williamson County Regional Planning Commission* v. *Hamilton Bank*, 473 U.S. 172, 194–95, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985), in which

[9] In *Port Clinton Associates*, there was no opportunity to seek a variance from the decision of the board of selectmen. Consequently, the board of selectmen was the equivalent of a zoning board of appeals for finality purposes.

the United States Supreme Court had concluded that a property owner is not required to pursue " 'those procedures [that] clearly are remedial' " or those in which the reviewing entity, be it a court or an administrative review board, " 'was empowered, at most, to review [the] rejection [of the plaintiff's application], not to participate in the [initial decisionmaker's] decisionmaking.' " *Port Clinton Associates* v. *Board of Selectmen*, supra, 605. Consequently, we concluded that Port Clinton was not obligated, prior to bringing a taking action, to pursue an administrative appeal to the Superior Court pursuant to § 8-8 from the administrative action of the board denying the plaintiff's application. In effect, we countenanced an exemption from the exhaustion doctrine.[10]

Notwithstanding the fact that Port Clinton was not obligated to pursue an administrative appeal prior to asserting a taking claim, we also determined that it nonetheless had failed to meet its burden of demonstrating finality. Port Clinton had presented to the board only one relatively ambitious plan for expanding its piers. We noted that "[i]t is not implausible to conclude that the board might have approved a somewhat less 'grandiose' proposal . . . ." Id., 609–610. Consequently,

---

[10] By stating this proposition as an exemption from the exhaustion doctrine, we do not mean to imply that the doctrine is wholly inapplicable. We mean to say only that a property owner who has applied for and been denied a variance by the zoning board of appeals is not obligated to pursue a statutory appeal to the Superior Court pursuant to § 8-8 in order to meet the requirement of finality for purposes of bringing an inverse condemnation action. This notion is perhaps better understood as the inapplicability of the exhaustion doctrine in those limited circumstances where the constitutionality of a regulation as applied is at issue pursuant to a taking claim. In such cases, the plaintiff is exempt from the usual requirement of first pursuing judicial review of the otherwise final administrative action. Other issues relating to finality, specifically, whether the property owner must file multiple plans or exhaust existing *administrative* remedies other than an appeal to the Superior Court, are not addressed by this specific portion of the holding in *Port Clinton Associates*.

we concluded that Port Clinton could not sustain its burden of demonstrating finality because it had not shown that the board would have denied a less ambitious plan. We also concluded that, in the absence of such finality, it would be impossible for the court to determine whether a taking had occurred and, if it had, to calculate damages. Id., 603.

## II

The defendant argues that certain aspects of our decision in *Port Clinton Associates* are dispositive of this appeal. According to the defendant, the exemption from the exhaustion requirement in *Port Clinton Associates* is not applicable in this case because that exemption has been applied only in cases where the plaintiff's taking claim is predicated on 42 U.S.C. § 1983,[11] not to "pure" taking claims, that is, those claims based exclusively on the constitutional just compensation clauses. See footnote 3 of this opinion. The defendant further argues that the remainder of the holding in *Port Clinton Associates*, namely, the requirement that a plaintiff must submit multiple plans before achieving finality, is applicable. Consequently, the defendant contends that the trial court properly dismissed the plaintiff's inverse condemnation action as unripe for lack of finality both because the plaintiff had submitted only a single plan in conjunction with its application for a variance, and because the plaintiff's appeal to the Superior Court pursuant to § 8-8 was not final.

---

[11] Title 42 of the United States Code, § 1983, provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

The plaintiff, on the other hand, argues that the regulatory action upon which its taking claim is based was complete when the board, as the initial decision maker, denied its application for a variance, and that its inverse condemnation action became justiciable at that point. It maintains that the exemption from the exhaustion doctrine, which is applicable to § 1983 taking claims, should be equally applicable to pure taking claims. It also argues that the necessity of submitting multiple plans is not a per se rule but is based on the circumstances of each case. According to the plaintiff, submission of additional plans would have been unavailing in this instance and, thus, was not a requisite to establishing finality. We agree with the plaintiff.

A

Effect of the Plaintiff's Administrative Appeal

We begin our analysis of this issue by emphasizing the distinction between an inverse condemnation action and an administrative appeal to the Superior Court from an adverse decision of a zoning board of appeals pursuant to § 8-8. A plaintiff's administrative appeal serves the remedial purpose of reviewing the propriety of the board's decision. *Port Clinton Associates* v. *Board of Selectmen*, supra, 217 Conn. 607 ("[Section 8-8] provides for an administrative appeal to the Superior Court, which may review the propriety of the initial decisionmaker's action within the usual limits on judicial review of an agency action. The statutory appeals process under § 8-8 is, thus, precisely the type of procedure that a [taking] claimant . . . need not pursue as a prerequisite to filing his suit."); see General Statutes § 8-8 (*l*). An administrative appeal cannot provide a monetary remedy to the plaintiff.

By contrast, in an inverse condemnation action, a plaintiff alleges that a regulatory action constitutes a

taking for constitutional purposes and seeks compensation for the alleged taking. An inverse condemnation action does not concern itself with the propriety of the board's action. The only inquiry is whether a taking has, in fact, occurred. If the board's action resulted in a taking, the inverse condemnation action will determine the amount of compensation due. Although action by the Superior Court favorable to the plaintiff in the plaintiff's administrative appeal might eliminate the plaintiff's claim of compensation for a complete taking, the plaintiff might nonetheless be entitled to compensation for the temporary taking that wrongly denied the plaintiff's use of its property while the appeal was pending.[12]

The defendant asserts that our conclusion in *Port Clinton Associates* with respect to the inapplicability of the exhaustion doctrine to a taking claim does not apply in the context of this case because the plaintiff has brought only a pure taking claim, not a § 1983 action. In *Port Clinton Associates*, we were presented with a "pure" taking claim pursuant to the state and federal constitutions, as well as a statutory taking claim pursuant to § 1983. There, relying on *Williamson County Regional Planning Commission* v. *Hamilton Bank*, supra, 473 U.S. 194–95, we concluded that exhaustion of the administrative appeal process was not required to sustain a *§ 1983 taking claim.*[13] *Port Clinton Associates* v. *Board of Selectmen*, supra, 217 Conn. 604–10.

---

[12] "Temporary takings" are defined by the United States Supreme Court as "those regulatory takings which are ultimately invalidated by the courts." *First English Evangelical Lutheran Church* v. *Los Angeles County*, 482 U.S. 304, 310–11, 107 S. Ct. 2378, 96 L. Ed. 2d 250 (1987).

[13] We stated in *Port Clinton Associates* that "we need not decide whether one making [a pure taking] claim is never required to pursue procedures that provide review of the legality of an initial decision but cannot themselves result in a decision allowing an owner some reasonable use of his property or award just compensation for deprivation of reasonable use of the property. For the same reasons given above, whether or not Port Clinton would be required to exhaust the statutory appeals process before presenting its pure

We declined to address the issue of whether it would be necessary for the plaintiff to exhaust its administrative remedies by way of an appeal to the Superior Court in order to establish finality for a pure taking claim.

The defendant has not presented any authority in support of the proposition that a pure taking claim, unlike a § 1983 taking claim, requires exhaustion of administrative remedies. Our own research has revealed none. A taking claim brought pursuant to § 1983 is predicated upon the federal constitutional requirement of the fifth amendment that the government may not take private property without just compensation. See footnote 3 of this opinion. "[T]he touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution . . . ." *Monell* v. *Dept. of Social Services*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Consequently, in the context of a taking claim, § 1983 is no more than a statutory vehicle for redress of an alleged unconstitutional taking without just compensation. There is no relevant distinction between the procedure and the substance of a pure taking claim and a § 1983 taking claim that would justify different treatment with respect to the applicability of the exhaustion and finality doctrines. In reviewing our precedent and the policy considerations underlying taking claims of either genre, we conclude that the inapplicability of the exhaustion doctrine is equally applicable to both § 1983 taking claims and pure taking claims.

Moreover, we indicated in *Port Clinton Associates*, with respect to the inapplicability of the exhaustion

taking claim outside the § 1983 context, we conclude that the trial court had no jurisdiction to consider the taking claim until Port Clinton obtained a final decision from the board of selectmen as to the amount of expansion it would permit." *Port Clinton Associates* v. *Board of Selectmen*, supra, 217 Conn. 610.

doctrine, that "we have used similar reasoning in addressing a pure taking claim; see *Florentine* v. *Darien*, [supra, 142 Conn. 415] . . . ." *Port Clinton Associates* v. *Board of Selectmen*, supra, 217 Conn. 610. In *Florentine*, we concluded that "[i]f the plaintiffs are denied relief by the zoning board of appeals, the action of the zoning authorities has then become final and complete. The plaintiffs are still in a position to appeal from the decision of the zoning board of appeals *or* to challenge by direct attack in an independent proceeding the constitutionality of the regulation, or indeed, of the entire ordinance or law." (Emphasis added.) *Florentine* v. *Darien*, supra, 430; see id., 428. *Florentine* presented a pure taking claim, not a § 1983 claim, and we concluded that the plaintiffs could challenge the constitutionality of the zoning regulation directly from the ruling of the zoning board of appeals, which constitutes the final *administrative* decision maker, without first bringing an administrative appeal from that decision to the Superior Court. Id., 431. That conclusion was based on the same rationale set forth in *Port Clinton Associates* relating to § 1983 taking claims and was cited in *Port Clinton Associates* as supporting authority. "[T]he zoning commission and the board of appeals act in a legislative or an administrative capacity, and after they have both functioned the zoning powers have been fully exercised. The Court of Common Pleas [now Superior Court], on appeal, acts, and can only act, in a judicial capacity. It has no legislative or administrative powers." *Florentine* v. *Darien*, supra, 431. Because the Superior Court does not have the ability to act in a legislative or administrative capacity, its review is exclusively remedial, not participatory. *Port Clinton Associates* v. *Board of Selectmen*, supra, 608.

The rationale for permitting an inverse condemnation claim without the prerequisite of an administrative

appeal to the Superior Court is simply that the regulatory action that allegedly resulted in a taking has occurred upon the final decision of the initial decision maker, typically the zoning board of appeals. An administrative appeal from that decision may, if favorable to the property owner, render the alleged taking temporary, but it does not eliminate the taking. Nor can the administrative appeal provide the compensation that the inverse condemnation action seeks. *Port Clinton Associates* v. *Board of Selectmen,* supra, 217 Conn. 604–10. Consequently, we are persuaded that a party asserting a pure taking claim should be exempt from the obligation to pursue an appeal pursuant to § 8-8 to the same extent as a party asserting a taking claim pursuant to § 1983. The plaintiff, therefore, was not required to pursue its administrative appeal pursuant to § 8-8 prior to instituting this inverse condemnation action.

The defendant, nevertheless, argues that the trial court properly determined that the plaintiff's inverse condemnation claim was not ripe for adjudication because, at the time the trial court rendered its decision, a future reversal, on administrative appeal, of the board's decision would have operated to provide the plaintiff with all permissible relief. Specifically, the defendant contends that if the board's decision had been reversed on appeal and the plaintiff's variance application subsequently had been granted, the plaintiff would not have been entitled to compensation for the fluctuations in the value of its property during the pendency of the appeal because such fluctuations do not constitute a temporary taking.

There are two problems with the defendant's argument. First, the factual predicate for the defendant's argument, namely a reversal of the board's action, was not the only possible outcome. In fact, the Superior Court has denied the plaintiff's administrative appeal,

and the Appellate Court has denied the plaintiff's application for certification to appeal from the judgment of the Superior Court.

Second, although a reversal of the board's decision would not have entitled the plaintiff to damages for mere fluctuations in the value of its property during the pendency of its administrative appeal, such reversal would not have precluded the plaintiff from obtaining damages pursuant to its inverse condemnation claim. We previously have said that "[w]e do not believe that the constitution requires compensation for any temporary infringement of an owner's property rights, no matter how slight, every time a town makes a mistake in construing an enabling statute or in measuring its geographical boundaries." *Port Clinton Associates* v. *Board of Selectmen*, supra, 217 Conn. 601–602. The United States Supreme Court has concluded that "[m]ere fluctuations in value during the process of governmental decisionmaking" do not constitute a temporary taking. *Agins* v. *Tiburon*, 447 U.S. 255, 263 n.9, 100 S. Ct. 2138, 65 L. Ed. 2d 106 (1980); see *Danforth* v. *United States*, 308 U.S. 271, 285, 60 S. Ct. 231, 84 L. Ed. 240 (1939) ("A reduction or increase in the value of property may occur by reason of legislation for . . . a project. Such changes in value are incidents of ownership. They cannot be considered as a 'taking' in the constitutional sense."). The plaintiff's inverse condemnation claim, however, does not seek to recover for mere fluctuations in the value of its property during the pendency of its administrative appeal. Instead, the plaintiff seeks compensation for lost profits and opportunities occasioned by the alleged unconstitutional taking.

The defendant's argument, moreover, is contrary to the holding of *First English Evangelical Lutheran Church* v. *Los Angeles County*, 482 U.S. 304, 107 S. Ct. 2378, 96 L. Ed. 2d 250 (1987) (*First English*). In *First*

*English,* the court concluded that, where finality of the underlying administrative action is established, a plaintiff may bring a claim for a temporary taking.[14] Id., 310–11. It is unnecessary for the plaintiff to await *judicial review* of the administrative action. Id. The court noted that the "[i]nvalidation of the ordinance or its successor ordinance after this period of time [between the final administrative decision and the subsequent judicial reversal of that decision], though converting the taking into a 'temporary' one, is not a sufficient remedy to meet the demands of the Just Compensation Clause." Id., 319. The court distinguished between the language in *Agins* v. *Tiburon,* supra, 447 U.S. 255, and that in *Danforth* v. *United States,* supra, 308 U.S. 271, with respect to the nonrecoverable nature of "mere fluctuations in value" as no more than a reflection of the notion that the valuation of the loss must be made at the time a taking has occurred, not prior thereto, and that depreciation in value due to preliminary action is not chargeable to the government. Thus, as the court noted, *preliminary* regulatory activity may not work a taking in the same way as a final regulatory decision. By preliminary regulatory activity, the court in *First English* was referring to those activities of the zoning authorities such as the process of submitting applications for, and consideration of, building permits, variances and the like. See *First English Evangelical Lutheran Church* v. *Los Angeles County,* supra, 326. As previously indicated, however, once the zoning board of appeals has finally ruled on these applications, the regulatory activity is final for purposes of pursuing an inverse condemnation claim. Id.; *Port Clinton Associates* v. *Board of Selectmen,* supra, 217 Conn. 606–607.

---

[14] The United States Supreme Court noted that *First English* presented the first opportunity to reach this conclusion. *First English Evangelical Lutheran Church* v. *Los Angeles County,* supra, 482 U.S. 310. Prior cases, including *Williamson County Regional Planning Commission* v. *Hamilton Bank,* supra, 473 U.S. 172, and *Agins* v. *Tiburon,* supra, 447 U.S. 255, had been tripped up at the threshold for lack of finality.

Consequently, we conclude that the plaintiff was not barred from pursuing this inverse condemnation action by the possibility that the alleged taking might be rendered temporary by a favorable resolution of its administrative appeal.[15]

## B

### Finality of the Board's Denial of the Plaintiff's Variance Application

The defendant next maintains that the plaintiff's inverse condemnation action was not ripe for adjudication because the plaintiff did not submit alternative plans to the zoning board. According to the defendant, submission of multiple plans is a prerequisite to a finding of finality by the initial decision maker.

In *Port Clinton Associates*, however, we did not conclude that submission of multiple plans is always required. We concluded only that "in most cases, a property owner must do more than submit one plan to an agency in order to establish that the agency's decision is 'final' for the purposes of the taking clause." *Port Clinton Associates* v. *Board of Selectmen*, supra,

---

[15] We have stated that "[t]o demonstrate the requisite finality, a property owner asserting a regulatory [taking] claim bears the burden of proving that the relevant government entity will not allow *any* reasonable alternative use of his property." (Emphasis in original.) *Gil* v. *Inlands Wetlands & Watercourses Agency*, 219 Conn. 404, 415, 593 A.2d 1368 (1991). While we recognize that the board's action does not render the plaintiff's property unfit for *any* use, the plaintiff has alleged that the action renders the property unfit for any economically feasible use. This appeal is brought following the grant of a motion to dismiss. "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." *Pamela B.* v. *Ment*, 244 Conn. 296, 308, 709 A.2d 1089 (1998). We accept as true, for purposes of this appeal only, that the board's denial of the variance, because it is a final administrative action, has left the plaintiff without any reasonable use of its property, at least until such time as that action may be reversed by subsequent judicial action.

217 Conn. 607. We expressly included the caveat, however, that "repeated applications and denials" are not required and the property owner is not obliged to "take patently fruitless measures." (Internal quotation marks omitted.) Id. We also indicated that "[p]recisely what procedures a given property owner must pursue [before finality may be assured] depends upon the specific regulation at issue." Id., 606. We conclude that the plaintiff was not obligated, under the present circumstances, to file multiple plans with the zoning board as a predicate to a determination that the board, as the initial decision maker, had rendered a final decision.

The basis for the board's decision in the present case, unlike that in *Port Clinton Associates*, was not that the proposed nonconforming use was unacceptable, but, rather, that the plaintiff had not demonstrated that it suffered from a hardship that warranted the granting of a variance. It is well settled that the granting of a variance must be reserved for unusual or exceptional circumstances. "Proof of existence of such hardship is a condition precedent to the granting of such variances." *Point O'Woods Assn., Inc.* v. *Zoning Board of Appeals*, 178 Conn, 364, 368, 423 A.2d 90 (1979). "[T]he established law of this state . . . prohibits a zoning board of appeals from reversing its previous decision unless the facts and circumstances which actuated the decision are shown to have so changed as to vitiate or materially affect the reason which produced and supported it and no vested rights have intervened." *Laurel Beach Assn.* v. *Zoning Board of Appeals*, 166 Conn. 385, 387, 349 A.2d 834 (1974). The submission of a different application would not have constituted a material change of circumstances with respect to the issue of hardship. Therefore, the board could not have reversed its decision on that issue. In other words, because the basis for the denial of the plaintiff's requested variance was lack of hardship, a different

plan could not have changed the result. Consequently, the submission of an alternative plan would have been a "patently fruitless measure" and was not, therefore, a prerequisite to the plaintiff's inverse condemnation claim.

### III

Finally, we consider whether the trial court properly concluded that the plaintiff's inverse condemnation claim was properly dismissed in light of the prior pending action doctrine. The prior pending action doctrine permits the court to dismiss a second case that raises issues currently pending before the court. "The pendency of a prior suit of the same character, between the same parties, brought to obtain the same end or object, is, at common law, good cause for abatement. It is so, because there cannot be any reason or necessity for bringing the second, and, therefore, it must be oppressive and vexatious. This is a rule of justice and equity, generally applicable, and always, where the two suits are virtually alike, and in the same jurisdiction." (Internal quotation marks omitted.) *Halpern* v. *Board of Education*, 196 Conn. 647, 652–53, 495 A.2d 264 (1985). "We must examine the pleadings to ascertain whether the actions are 'virtually alike' "; id., 653; and whether they are brought to adjudicate "the same underlying rights." Id., 655; *Beaudoin* v. *Town Oil Co.*, 207 Conn. 575, 584, 542 A.2d 1124 (1988).

As indicated above, an administrative appeal pursuant to § 8-8 and an inverse condemnation action are distinct actions that raise distinct claims and seek distinct remedies. At least facially, the plaintiff's purpose here is not to bring vexatious litigation, but to obtain compensation for an alleged unconstitutional taking. The administrative appeal may alleviate the continuation of the alleged taking, but it cannot provide compensation. Consequently, the actions are neither virtually

alike nor do they seek to adjudicate the same rights. Moreover, if we were to conclude that the prior pending action doctrine could preclude an inverse condemnation claim when the prior action is an administrative appeal from the adverse decision of the board, it would render meaningless the rule articulated above excluding such actions from the exhaustion doctrine.

The trial court concluded that the prior pending action doctrine was applicable because the plaintiff could have raised its taking claim in its administrative appeal. Although the plaintiff could claim in its administrative appeal that the board's denial of its variance was so unreasonable or arbitrary that it was confiscatory; see *DeForest & Hotchkiss Co.* v. *Planning & Zoning Commission*, 152 Conn. 262, 269 n.1, 205 A.2d 774 (1964); the court could do no more than remand the case to the board for reconsideration if it agreed with the plaintiff. It could not award any monetary damages. Connecticut has no statutory vehicle by which to obtain compensation for a regulatory taking and, therefore, a common-law inverse condemnation action is the sole method by which the plaintiff may be compensated if the board's denial of its application for a variance constitutes a taking. See *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 250 n.15, 662 A.2d 1179 (1995)("[i]nverse condemnation is 'a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted' ").

To the extent that the issues addressed in the inverse condemnation action overlap the administrative appeal, the parties would be free to request a consolidation of the cases. Alternatively, they may employ the procedural tools of claim and issue preclusion to prevent duplicative litigation of the same issues or claims. At any rate, the plaintiff's inverse condemnation action is

not precluded by the existence of its pending administrative appeal from the adverse ruling of the board.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to the trial court for further proceedings according to law.

In this opinion the other justices concurred.