[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
FACTS
The plaintiffs in this matter are the Stop Shop Supermarket Company ("Stop Shop") and the Cicero Family Partnership ("The Ciceros"). The Ciceros own five parcels of land in Windsor, four of which are contiguous and one of which is across Dunfey Lane from the others. The property has a total area of just under twelve acres and is located between Route 91, Bloomfield Avenue (Route 305) and Dunfey Lane. Four of the parcels are zoned B2 (business) and one is zoned AG (agricultural).
The applicants filed an application with the Windsor Town Planning Zoning Commission requesting three special use permits and approval of a site plan.
The applicants' requests were as follows:
Special use No. 10-I — parking in front of the building
 Special use No. 10-H — transfer of non-residential coverage
 Special use No. 10-G — development of a site of more than two acres.
 Site plan No. 53d — site plan for the Super Stop 
Shop market.
The application was filed on December 2, 1996.
Between December and January of 1997, subsequent to the filing of the application, numerous meetings were held between the applicants and Windsor staff members. Public hearings were held or continued on April 8, May 13 and June 3. A decision was made on July 8, 1997.
The Commission voted in favor of the permit for parking and denied the permits for transfer of residential coverage and development of more than two acres. The Commission also denied site plan approval, largely because the denied special permits were essential prerequisites.
Pursuant to the applicants' proposal, all development would be done on the three parcels zoned B2, but they sought a transfer CT Page 15316 of development rights from the agricultural land (AG) to the land zoned business which would have the consequence of allowing more intense development.
AGGRIEVEMENT
At the hearing on this matter the deed to the Cicero Family Partnership was admitted into evidence without objection. The appellant's counsel also provided the court evidence sufficient to show that the property was leased to Stop Shop at the time of the application and the lease has continued to the present time. Accordingly, the court finds that as the owners or lessees of the subject property, both Super Stop Shop and The Ciceros are aggrieved.
Special Use No. 10-H — Transfer of Non-Residential Coverage
The Town of Windsor has a special use provision which allows the transfer of development rights from one parcel to another. The provision is found in Section 2.4.15r which provides in pertinent part:
 "In order to preserve land with historic, ecological, aesthetic, agricultural or recreational value or potential a commission may allow coverage permitted by these regulations upon a parcel (the `sending parcel') within any non-residential zone to be transferred and added to the authorized coverage of another parcel (the `receiving parcel') within any non-residential zone. The commission must first find that the transfer will better promote the health, safety, convenience and general welfare of the community in a manner which will likely outweigh the adverse impacts of increased development density on the receiving parcel.
The regulation sets forth factors to be considered by the commission when a request is made for a special use in accordance with the provision. Factors to be considered are as follows:
 "a) The location of the sending parcel and the public access to it if it is used for recreational or cultural purposes;
 b) The existing value or potential value of the sending parcel for historic preservation, as a nature reserve, as an aesthetic asset, as open space, as a recreational amenity, or CT Page 15317 as open agricultural land;
 c) Whether the transfer of coverage is preferable to conventional development of the parcels involved.
Under the Windsor Zoning Regulations, in the absence of a transfer of right from another parcel, the receiving parcel is allowed a density of fifty percent. An increase to sixty-seven percent of density is possible through a transfer of development rights. In the instant case the maximum allowable increase would be sixty point eight percent. The increase, based upon the application, would be between fifty-seven percent and fifty-nine percent, depending on the amount of parking built.
The commission gave the following reasons for denying the special permit:
 "1. This landlocked sending parcel has little historic ecological, agricultural or recreational value or potential.
 2. Increased development density on the receiving parcel would likely result in adverse impacts on the nearby residential neighborhood.
 3. The transfer of coverage is not preferable to conventional development of the parcels."
Any discussion of the granting of special use permits by a municipal agency in Connecticut requires an examination ofWhisper Wind Development Corp. v. Planning Zoning Commission,229 Conn. 176 (1994) and Irwin v. Planning Zoning Commission,244 Conn. 619 (1998). Whisper Wind makes clear that general considerations such as public health, safety and welfare, if enumerated in the regulations, may be the basis of the denial of a special permit. Further, the court in Irwin holds that "if a special permit process were purely ministerial there would be no need to mandate a public hearing".
In Irwin the Supreme Court held:
 "The plaintiff argues that the commission has no independent discretion to deny a plan which satisfies the standards contained in the special permit regulation. Although it is true that the Zoning Commission does not have discretion to deny a special permit when the proposal meets the standards, CT Page 15318 it does have discretion to determine whether the proposal meets the standards set forth in the regulations. If, during the exercise of its discretion the Zoning Commission decides that all of the standards enumerated in the special permit regulation are met, then it can no longer deny the application. The converse, is, however, equally true. Thus, the Zoning Commission can exercise its discretion during the review of the proposed special exception [or special use application] as it applies the regulations to the specific application before it. Irwin at 628.
The landlocked parcel of approximately 1.9 acres was determined by the Conservation Commission and the Wetland Commission to have a certain value as open space. However, there are facts in the record sufficient for the Planning Zoning Commission, in the exercise of its discretion, to find that the land has little historic, ecological, agricultural or recreational value or potential.
There also are facts from which the commission could reasonably conclude that increased development density on the receiving parcel would be likely to adversely impact the nearby residential neighborhood.
In this regard the record contains evidence that Route 305 (Bloomfield Avenue) at its intersection with Interstate 91 in this area has a traffic problem. It has five traffic lights in a row, two gas stations, an ambulance station, a fire house and the Windsor Police Department. It serves as a major east-west corridor for industrial traffic from Bloomfield's and Windsor's industrial areas.
The commission heard from a traffic expert, testifying for the applicants, who indicated that there was no traffic problem or at least that any traffic problem could be solved. The commission heard from an expert retained by neighboring property owners who indicated that there would be a traffic problem. The same result was largely reached by the traffic expert for the town. There also were numerous residents of the area who testified about a potential traffic problem.
The applicant called traffic engineer Fred Hesketh. The Town's evidence was presented by Mr. Wayne Radke, Windsor's legal traffic authority. Mr. Radke required in his analysis that all intersections must contain a level of service C at all times. CT Page 15319 Furthermore, plans for pedestrian traffic must assume that the people will cross Bloomfield Avenue to get to this site eleven times an hour. Neither of these requirements is specifically set forth in the zoning regulations. The applicants have argued that this is the application of a standard not contained in the zoning regulations. See Kelly Property Development v. Lebanon Planning Zoning, 191 Conn. Lexis 82 (1991) and Sowin Associates v.Planning Zoning, 23 Conn. App. 370, 376 (1990). Regulations must be reasonably precise so that both the applicant and the commission have notice of their rights and obligations.
The court agrees with the applicant that the commission cannot impose a requirement not contained within its regulations. However, the court does not agree with the applicant that that is what the commission is doing in the instant case. Rather, it appears that the commission's expert is using standards to evaluate the factual compliance with the regulation with which the applicant's expert does not agree. Faced with the commission's discretion as fully set forth in Irwin, the court finds that the commission can rely on the opinion of F. Andrew Wolfe on behalf of the neighbors, Bruce Hilson on behalf of the Town, Wayne Radke the traffic authority, as well as the opinion of numerous neighbors concerning potential traffic problems.
The court finds that the commission, in the exercise of its discretion, could reasonably have found the parcel to have little "historic, ecological, agricultural or recreational value or potential." Furthermore, the commission, in the exercise of its discretion, could have determined a basis in the evidence for the conclusion that "increased development density on the receiving parcel will likely result in adverse impacts on the nearby residential neighborhood".
Accordingly, the court finds that the preceding two reasons are adequate to deny the requested special permit and are reasonably supported by the evidence.
The appeal from the denial of the special use permit and application no. 10-H is dismissed.
Special use 10-G: development on sites more than two acres.
Under the Windsor Zoning Regulations the development of a site of more than two acres requires a special permit in the B2 zone (Regulations Sections 5.2.61 and 2.44). Such development is CT Page 15320 allowed as of right in a B3 zone. In denying the application for the development of more than two acres the commission gave the following reasons:
 1. The segment of Bloomfield Avenue in the vicinity of the proposed site is characterized by high traffic volumes especially during peak hours, by many driveways and side streets, and by five traffic signals all within a short distance, resulting in cuing and traffic safety problems. This proposal is also located by a nearby public complex providing police, fire and ambulance service.
 2. A 69,000 square foot supermarket will generate a substantial increase in traffic, especially during peak hours, causing excessive traffic congestion and confusing and dangerous traffic patterns. . . .
Without deciding whether reasons 3, 4, 6 and 7 are supported by the record, even the applicant's expert agrees that there will be a substantial increase in traffic as a result of this development for the reasons set forth in the discussion of the transfer of development rights.
The court finds that the commission had sufficient facts by which it could have decided that the applicants proposal presented unacceptable levels of traffic. For this reason the appeal of the commission's denial of special use 10-G is dismissed.
Site Plan Review
Under the Windsor regulations, the applicants were entitled to defer site plan review until after they had received required special use permits. These applicants applied for the site plan review simultaneous with the application for the special use permits. Each of the permits, which were denied, was a prerequisite to site plan approval. If the court had agreed with the applicant that the requested special permits should have been issued, the court would be required to examine in more detail the denial of the site plan. Under the facts before it, since the court has dismissed the appeal denying each site plan, the commission is correct in holding that the site plan did not conform to the regulations regarding density and maximum size.
Taking by inverse condemnation
CT Page 15321
The Windsor Planning Zoning Commission had previously denied an application to re-zone the agricultural property to B2 to facilitate the construction of a supermarket on this site. In the instant case, it has denied a transfer of development rights from the agricultural property to the B2 property. Subsequent to this appeal, it has denied a purposed re-zoning of the agricultural property to B2 with no particular use linked to the zone change.
The applicant claims that the agricultural property is virtually unusable in its present state. The property, which contains about 1.99 acres, is non-conforming in an agricultural zone requiring three acres for agricultural uses. It does not have any street frontage and can be accessed only through the B2 parcels.
The first denial cited by the applicants is a denial of a zone change from AG to B2 in 1991. This denial was appealed and that appeal was dismissed on the merits. Joseph Cicero, Jr. v.Windsor Planning Zoning Commission, Et Al, Hartford Superior Court Docket CV-92-05054-S, 1193 W.L. 35651.
The second denial presently before the court, is the denial of the special permits and site plan.
The third denial was a second attempt to re-zone the 1.99 acres from AG to B2. That request and the denial thereof occurred after the appeal in the instant case.
In the most recent denial of a requested zone change the commission's decision stated:
 "Denied without prejudice for the following reason; an RC zone or perhaps a less intensive business zone is more consistent with the plan of development."
The commission's decision in this regard is not before this court. This court is not called upon to determine the propriety of the recent denial of a zone change. This court is called upon to determine whether the two denials of zone change and the denials of the special permits and site plan amount to an inverse condemnation of the subject property.
Recently in Cumberland Farms, Inc. v. Groton, 247 Conn. 196
CT Page 15322 (1998) the Supreme Court concluded that the plaintiff could have raised its taking claim in its administrative appeal. In doing so, it could claim that the board's denial of its variance was so unreasonable or arbitrary that it was confiscatory. The court could not award money damages. The most that the trial court could do would be to remand the case to the board for reconsideration. Cumberland Farms at 217.
Relying on Cumberland Farms the court concludes that the applicants raised the question of inverse condemnation in a procedurally acceptable manner. While one application for a zone change appears to have included no request for a specific use, the other zone change application and the special permit applications have each concerned a Super Stop Shop store. Indeed, the proposed Super Stop Shop in the instant case contains more square footage than the Stop Shop proposed in 1991.
The court recognized that the applicant's claim is procedurally proper based upon Port Clinton Associates v. Boardof Selectman, 217 Conn. 606 and Cumberland Farms, Inc. v. Groton,247 Conn. 196 (1998). However, the decision in Cumberland Farms,Inc. is instructive on the question of the factual predicate required for a finding of inverse condemnation. In CumberlandFarms the plaintiff had requested a variance but was unable to demonstrate that it suffered from a hardship which would warrant the granting of a variance. The existence of a hardship in a variance application is not related to the proposed use of the property but rather to the situation where unusual or exceptional circumstances exist with regard to the existing property. Our law prohibits a zoning board of appeals from reversing a previous decision unless facts and circumstances which actuated that decision are shown to be so changed as to vitiate, or materially effect the reason which produced and supported it, and no vested rights have intervened. The submission of a different proposal would not constitute a material change of circumstances with respect to the issue. Therefore, under normal circumstances, a zoning board of appeals could not reverse its decision on the issue before it. Since the basis for denial of the plaintiff's requested variance in Cumberland Farms, Inc. was a lack of hardship, a different plan for the use of the property would not change the result. Consequently the submission of an additional plan would have been a "patently fruitless measure" and was not a prerequisite to the plaintiff's inverse condemnation claim. However, in the 1991 appeal concerning this same land Judge CT Page 15323 Sheldon held:
 "Other alternatives exist. The plaintiff might seek to rezone a piece of his larger, southern parcel agricultural in order to afford legal access to a smaller northern parcel. Or he might simply seek a variance to permit him to gain access through an incapable zone. In any event, he has afforded the court no proof that the decision of the defendant commission irrevocably sealed the subject parcel's fate as an inaccessible agricultural zoned land of no use or economic benefits to its owners."
Subsequent to Judge Sheldon's 1991 finding, the Planning 
Zoning Commission has again denied the instant application for a Super Stop Shop. More recently, on December 9, 1997, in denying the requested zone change wrote:
 "An RC zone or perhaps a less intensive business zone is more consistent with the plan of development".
While the applicant undoubtedly disagrees with the commission's statement in that regard, the issue of consistency with the plan of development in the December 9th zone change is not before this court. However, in view of the commission's apparent willingness to consider an RC zone or a less intensive business zone, the court concludes that there is less finality at this time to support a claim of inverse condemnation than was faced by Judge Sheldon in 1991. Indeed, while there has been an additional proceeding which forms the basis for the present action, and an additional proceeding requesting a zone change, the court finds no basis to conclude that the applicants have attempted to maximize the use of their property by applying for a less intensive use.
For the foregoing reasons the appeals of the plaintiff are dismissed and the court finds that no inverse condemnation has occurred.
Kevin E. Booth, J.