ARRIGONI ENTERPRISES, LLC, Plaintiff,

v.

TOWN OF DURHAM, Durham Planning and Zoning Commission, and Durham Zoning Board of Appeals, Defendants.

Civil No. 3:08CV00520 (AWT).

United States District Court, D. Connecticut.

March 27, 2009.

Richard D. Carella, Law Offices of Richard D. Carella, Middletown, CT, for Plaintiff.

Kevin Michael Tighe, Thomas R. Gerarde, Howd & Ludorf, Hartford, CT, for Defendants.

### RULING ON MOTION TO DISMISS

ALVIN W. THOMPSON, District Judge.

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the defendants move to dismiss Count Three of the Complaint, which sets forth a claim of inverse condemnation and regulatory taking, as not ripe for adjudication. For the reasons set forth below, the motion to dismiss is being granted.

### I. FACTUAL BACKGROUND

There are three industrial zones in Durham, Connecticut: a Design Development District ("DDD") zone, a Light Industrial District ("LID") zone, and a Heavy Industrial District ("HID") zone. The property at issue in this case is located in Durham's only DDD zone.

Since 1955, Arrigoni Enterprises ("Arrigoni") and the Arrigoni family have owned an undeveloped 9.1 acre parcel of industrial land (the "Property") located on the west side of Mountain Road in Durham, Connecticut. The land is located between the Tilcon Quarry property (zoned both HID and DDD) and two residential properties. One of those residential properties is zoned as Farm–Residential ("FR") and the other as a nonconforming residential lot in the DDD zone.

Prior to 1986, each of the properties currently in the DDD zone was zoned as FR. In June 1986, the Durham Planning and Zoning Commission (the "Commission") changed the zoning of the Property to LID, citing, *inter alia,* the need to create a light industrial buffer zone in order to harmonize the heavy industrial uses of the Tilcon Quarry operations with the residential uses of other properties also located in the area. In January 1988, the current DDD zone regulations were adopted. As a result of this change, only a limited number of light industrial uses are permitted in the DDD zone, and buildings and lots are subject to limitations on development.

In 2005, Arrigoni sought approval for a zoning change from DDD to HID, which would allow it to excavate, crush, and remove earth on its property so that it could construct three light industrial buildings. The HID zone is the only zone in which rock crushing and removal is a permitted use. The Commission denied the zoning change request on May 4, 2005.

On September 13, 2005, Arrigoni applied to the Commission for a special development permit for the site development and construction of the three light industrial buildings pursuant to the Town of Durham Zoning Regulations (the "Regulations"). Following the Commission's instructions, Arrigoni applied for a second special permit, under Section 12.05.01.02 of the Regulations[1] for excavation, crushing and removal of earth necessary for the construction of the buildings. Issuance of the special development and excavation

---

1. Section 12.05.01.02 mandates a special permit for the excavation of material in excess of 1,000 cubic yards.

permits was subject to three public hearings.

Arrigoni submitted a master site plan of proposed construction activity on the Property as required by the Regulations. The site plan included information detailing how the proposed construction met or exceeded each of the requirements in the Regulations and the Special Standards for special permit applications in the DDD zone. Arrigoni also submitted an excavation site plan to support its excavation permit application, as required by the Regulations. On December 21, 2005, the Commission denied the applications for both permits, stating that the amount of material to be removed was excessive and that the crushing of rock was not allowed in the DDD zone under the Regulations.

Arrigoni took an administrative appeal of both denials to Connecticut Superior Court in January 2006, contending that the Commission acted illegally and arbitrarily in denying both permits, and that the Commission had violated its constitutional rights to equal protection and due process, and had inversely condemned its property. The Superior Court upheld the Commission's denial on February 15, 2007, reasoning that the project would have a negative impact on the public health, safety and welfare, and that the proposed activity violated zoning regulations. The court did not address the constitutional claims, and it denied Arrigoni's request to re-argue. Arrigoni sought certification to the Appellate Court, which was denied.

In August 2007, Arrigoni applied to the Durham Zoning Board of Appeals (the "Board of Appeals") for a variance regarding the prohibition against rock crushing, arguing that the topography and geology of the Property was a hardship and that any development of the land would require the excavation, crushing and removal of the rock. The Board of Appeals denied the application on August 9, 2007, after a public hearing.

The Complaint sets forth claims for denial of equal protection in violation of 42 U.S.C. § 1983 (Count One); denial of substantive due process in violation of 42 U.S.C. § 1983 (Count Two); inverse condemnation or regulatory taking without compensation in violation of 42 U.S.C. § 1983 (Count Three); and a declaratory judgment that section 12.05 of the Regulations is vague and subject to arbitrary application and enforcement, and therefore void (Count Four).

## II. *LEGAL STANDARD*

A claim is properly dismissed for lack of subject matter jurisdiction under Fed. R.Civ.P. 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the claim. *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir.1996). On a Rule 12(b)(1) motion to dismiss, the party asserting subject matter jurisdiction "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir.2005). When reviewing a motion to dismiss for lack of subject matter jurisdiction, the court may consider evidence outside the pleadings. *See Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000).

The standards for dismissal under Fed R. Civ. P. 12(b)(1) and 12(b)(6) are identical. *See Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 128 (2d Cir.2003). When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Although a complaint "does not need detailed factual allegations,

a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). The plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Mytych v. May Dept. Stores Co.*, 34 F.Supp.2d 130, 131 (D.Conn.1999), quoting *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D.Conn.1990) (citing *Scheuer*, 416 U.S. at 232, 94 S.Ct. 1683). In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir.1993).

### III. *DISCUSSION*

Arrigoni argues that because it raised its constitutional claims of equal protection, due process, and inverse condemnation with the Connecticut Superior Court, which failed to address them, and then was denied certification at the appellate level, it has availed itself of all state court proce-dures for recovery. Arrigoni claims no remedy exists within the state court system with respect to its constitutional claims. The defendants argue, however, that Arrigoni's takings claim is not ripe. This court agrees.

The Supreme Court held in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), that a claim of regulatory taking is not ripe until (1) the government entity charged with implementing the zoning regulations has reached a final decision regarding the application of the regulations to the property at issue, and (2) the property owner has sought just compensation through the procedures provided by the state for doing so, and has been denied said just compensation. Here, it is undisputed that the first prong of the *Williamson* test as to finality has been satisfied. The second prong is at issue.

As to the second prong, the Supreme Court held in *Williamson* that a property owner has not suffered a "violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the proceedings provided by the State for obtaining such compensation...." 473 U.S. at 195, 105 S.Ct. 3108. This requirement is premised on the fact that the "Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Id.* at 194, 105 S.Ct. 3108. Thus, if a state has an adequate procedure for obtaining just compensation, a plaintiff must follow that procedure first before claiming a violation of the Just Compensation Clause. *Id.* at 195, 105 S.Ct. 3108.

Connecticut General Statutes § 8–8 provides for administrative appeals of zoning decisions as a remedial measure. Section 8–8(b) provides that "any person aggrieved

by any decision of a board ... may take an appeal to the superior court for the judicial district in which the municipality is located...." *Id.* Unlike an independent inverse condemnation civil action, administrative appeals are remedial only and do not provide for compensation for any regulatory taking. Section 8–8(*l*) sets forth the superior court's powers in an administrative appeal: "The court ... may reverse or affirm, wholly or partly, or may modify or revise the decision appealed from. If a particular board action is required by law, the court, on sustaining the appeal, may render a judgment that modifies the board decision or orders the particular board action.... Costs shall be allowed against the board if the decision appealed from is reversed, affirmed in part, modified or revised." Conn. Gen.Stat. § 8–8(*l*).

■■■ "A plaintiff's administrative appeal serves the remedial purpose of reviewing the propriety of the board's decision," and "cannot provide a monetary remedy to plaintiff." *Cumberland Farms, Inc. v. Town of Groton,* 247 Conn. 196, 207, 719 A.2d 465 (1998) ("*Cumberland Farms I*"). *See also Cumberland Farms, Inc. v. Town of Groton,* 262 Conn. 45, 63, 808 A.2d 1107 (2002) ("*Cumberland Farms II*"). In an inverse condemnation action, by contrast, a plaintiff alleges that a regulatory action constitutes a taking, and seeks compensation for such a taking. *See Cumberland Farms I,* 247 Conn. at 207–08, 719 A.2d 465. If in such an action the court determines that a taking has occurred, the court will then determine the amount of compensation due. *Id.*

■■■ In *Cumberland Farms I,* the court observed that administrative zoning appeals and civil actions for inverse condemnation are "distinct actions that raise distinct claims and seek distinct remedies." 247 Conn. at 216, 719 A.2d 465. The plaintiff's purpose in bringing an action for an unconstitutional taking is to obtain compensation for such a taking. An administrative appeal will not provide such compensation. "The actions are neither virtually alike nor do they seek to adjudicate the same rights." *Id.* at 216–17, 719 A.2d 465. Because of this distinction, a property owner is not obligated to pursue an administrative appeal prior to pursuing a takings claim. *See id.* at 205, 719 A.2d 465. The *Cumberland Farms I,* court concluded that the pendency of an administrative appeal did not preclude bringing a civil takings action. *See id.* at 217, 719 A.2d 465.

■■■ Article First, section 11 of the Connecticut Constitution contains a takings clause: "The property of no person shall be taken for public use, without just compensation therefor." Although there is no separate statutory remedy, this clause can serve as the basis for an inverse condemnation action for just compensation. *See Laurel, Inc. v. State,* 169 Conn. 195, 200, 362 A.2d 1383 (1975)(stating that if there is a clear constitutional taking and if no statutory provision for the awarding of damages exists, "the court does have jurisdiction to determine the plaintiff's remedy"); *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 380 (2d Cir.1995)(stating that Conn. Const. Art. 1, § 11 may be used as the basis for an inverse condemnation action even in the absence of a separate statutory remedy). A property owner may seek compensation by bringing an independent civil action based on this clause, whereas a property owner may not seek compensation by taking an administrative appeal.

■■■ The plaintiff here has not satisfied the second prong of the *Williamson* test for ripeness. The Connecticut Constitution contains a clause that may be used as the basis of an action by the plaintiff to recover just compensation for the taking of its property. The plaintiff did not avail

itself of the procedure provided by the state to seek just compensation before claiming a violation of the Just Compensation Clause. Therefore, its claim is not ripe for adjudication.

## IV. CONCLUSION

For the reasons set forth above, the defendants' Motion to Dismiss (Doc. No. 12) is hereby GRANTED. Count Three is hereby dismissed.

It is so ordered.