[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS
Before the court is a motion for summary judgment brought by the defendant, the town of Groton, against the plaintiff, Cumberland Farms, Inc.
The facts of the case are familiar, and this court adopts the statement of facts as set forth by the Supreme Court in Cumberland Farms, Inc. v.Groton, 247 Conn. 196, 719 A.2d 465 (1998). "The zoning board of appeals of the town of Groton (board) denied, for lack of hardship, the application of the plaintiff, Cumberland Farms, Inc., for a zoning CT Page 1221 variance." Id., 197. "[T]he plaintiff owns land with a building, other structures and improvements in Groton. The building is more than twenty years old and was used as a car repair garage and gasoline service station since before the area was zoned residential by the defendant town. Three underground gasoline storage tanks are also located on the property. The car repair use of the building was abandoned in 1979. The remainder of the building continues to be used to sell gasoline and, to a limited extent, snacks and sundries.
"To comply with environmental laws and regulations, the plaintiff's property requires substantial upgrading. To offset the costs of these improvements, the plaintiff applied to the [defendant's] zoning board of appeals for a variance to the zoning regulations so that the [existing] nonconforming use of the property could be expanded to include a convenience store, as well as the existing gasoline service station. The [board] denied the plaintiff's application after a hearing. The plaintiff appealed the board's decision regarding its variance application to the Superior Court." (Internal quotation marks omitted.) Id., 198.
While the administrative appeal was pending, "[o]n September 5, 1996, the plaintiff filed [a separate] amended complaint, claiming inverse condemnation of the property and seeking damages and other compensation, pursuant to the fifth and fourteenth amendments to the United States constitution, as well as article first, § 11 of the Connecticut constitution." (Internal quotation marks omitted.) Id., 199. "In its inverse condemnation action, the plaintiff seeks compensation for an alleged taking of its property without just compensation. . . . Specifically, the plaintiff maintains that the board's denial, pursuant to the defendant's zoning regulations, of the variance application operated to deprive the plaintiff of any economically feasible, reasonable use of its property." Id., 202. "[T]he plaintiff seeks compensation for lost profits and opportunities occasioned by the alleged unconstitutional taking." Id., 212.
"On December 9, 1996, the trial court issued a twelve page memorandum of decision in which it determined that because the plaintiff submitted only one application for a variance to the defendant's zoning regulations, no final administrative decision had been made. The trial court also concluded that the plaintiff was required to exhaust its administrative remedies, through an appeal of the board's adverse decision on its variance application, before it could maintain a separate takings action. Finally, the trial court determined that because the plaintiff could have raised its takings claim in the appeal from the denial of its variance application, the prior pending action rule required that the plaintiff's inverse condemnation action be dismissed. Accordingly, the trial court granted the defendant's motion to dismiss CT Page 1222 the plaintiff's amended complaint for lack of subject matter jurisdiction." (Internal quotation marks omitted.) Id., 199-200.
"The plaintiff appealed from the judgment of the trial court to the Appellate Court." Id., 200. "The Appellate Court affirmed the trial court's decision, concluding that the plaintiff's inverse condemnation action was premature because its administrative appeal from the denial of its application for a variance was not yet final and, therefore, the action was not justiciable. [Cumberland Farms, Inc. v. Groton,46 Conn. App. 514], 517-19[, 699 A.2d 310 (1997), rev'd, 247 Conn. 196,719 A.2d 465 (1998)]." Cumberland Farms, Inc. v. Groton, supra,247 Conn. 200. On November 3, 1998, the Supreme Court reversed the judgment of the Appellate Court on the ground that it was not necessary for the plaintiff to complete its administrative appeal in order to bring its inverse condemnation action. Id., 217-18. On September 24, 1997, the Superior Court denied the plaintiff's administrative appeal from the decision by the board denying the plaintiff's variance application.Cumberland Farms v. Zoning Board of Appeals, Superior Court, judicial district of New London at New London, Docket No. 538647 (September 24, 1997, Purtill, J.). "On November 5, 1997, the Appellate Court denied the plaintiff's application for certification to appeal from the judgment of the Superior Court denying its administrative appeal. Thus, the plaintiff's administrative appeal has now been resolved." CumberlandFarms, Inc. v. Groton, supra, 247 Conn. 198 n. 2.
On December 10, 1998, the defendant filed a motion to strike the plaintiff's present action for inverse condemnation or regulatory taking on the ground that the complaint failed to state a claim upon which relief could be granted. On March 16, 1999, the court denied the motion to strike, finding that the plaintiff had alleged sufficient facts to sustain its action. Cumberland Farms, Inc. v. Groton, Superior Court, judicial district of New London at New London, Docket No. 539192 (March 16, 1999, Martin, J.).
On February 2, 2000, the defendant filed the present motion for summary judgment on the ground that there is no genuine issue of material fact and that the defendant is entitled to judgment as a matter of law, on the basis of claim preclusion (res judicata) and issue preclusion (collateral estoppel), in light of the prior judgment by the court in the administrative appeal, Cumberland Farms v. Zoning Board of Appeals, Superior Court, judicial district of New London at New London, Docket No. 538647 (September 24, 1997, Purtill, J.). The defendant's motion is supported by a memorandum of law and other documents.
On March 15, 2000, the plaintiff filed a memorandum of law in opposition to the motion, accompanied by a transcript of the remarks made CT Page 1223 by the members of the board in its administrative decision denying the plaintiff's variance application on May 22, 1996.
On April 3, 2000, the defendant filed a reply memorandum of law in support of its motion.
On April 24, 2000, the plaintiff filed a "surreply" to the defendant's motion. The court heard oral argument on July 19, 2000, at which time the defendant stated that it was abandoning its argument relating to res judicata, and would seek summary judgment solely on the basis of collateral estoppel.
 DISCUSSION
"The [summary] judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. A "motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried."Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989).
"The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citation omitted.) Rivera v. Double A Transportation,Inc., 248 Conn. 21, 24, 727 A.2d 204 (1999).
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . .The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) Serrano v. Burns,248 Conn. 419, 424, 727 A.2d 1276 (1999). Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. United Technologies Corp., 233 Conn. 732, 751, 660 A.2d 810
(1995). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski, 206 Conn. 495, 500,538 A.2d 1031 (1988).
"Summary judgment in favor of the defendant is properly granted if the defendant in its motion raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact." (Internal quotation marks omitted.) Serrano v. Burns, 248 Conn. 419, CT Page 1224 424, 727 A.2d 1276 (1999).
A claim of collateral estoppel, or issue preclusion, may properly be raised by way of a motion for summary judgment. Busconi v. Dighello,39 Conn. App. 753, 769, 668 A.2d 716 (1995), cert. denied, 236 Conn. 903,670 A.2d 321 (1996). "Because res judicata or collateral estoppel, when properly raised and established, will preclude a claim or issue, respectively, the defendant's invocation of this principle must first be resolved." (Internal quotation marks omitted.) Mazziotti v. AllstateInsurance Co., 240 Conn. 799, 811, 695 A.2d 1010 (1997).
The defendant town has brought the present motion for summary judgment on the ground that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law under the doctrine of issue preclusion (collateral estoppel). Specifically, the defendant argues that the prior decision by the court in the related administrative appeal action, Cumberland Farms v. Zoning Board of Appeals, Superior Court, judicial district of New London at New London, Docket No. 538647 (September 24, 1997, Purtill, J.) (affirming the board's denial of variance), precludes the claim of regulatory taking or inverse condemnation under the doctrine of issue preclusion.[1]
The plaintiff opposes the motion for summary judgment on two bases. First, the plaintiff argues that the previous decision by the court,Martin, J., denying the plaintiff's motion to strike the present action;Cumberland Farms, Inc. v. Groton, Superior Court, judicial district of New London at New London, Docket No. 539192 (March 16, 1999, Martin,J.); operates as the law of the case, estopping the defendant from making the same arguments in the present motion for summary judgment. Second, the plaintiff argues that the doctrine of issue preclusion is inapplicable to the present motion for summary judgment because the plaintiff did not or could not raise the issue of taking in the administrative proceedings before the defendant's zoning board or in the administrative appeal action before the court, Purtill, J. The plaintiff argues that in any case the issue of taking was not fully and fairly litigated in the administrative appeal.
 I
The plaintiff first argues on the basis of a waiver or estoppel theory that the defendant had the opportunity to, but did not, raise claim or issue preclusion in its earlier motion to strike. The plaintiff urges the court to rule that the defendant's failure to raise the doctrines of claim or issue preclusion operates as a waiver, estopping the defendant from asserting them in the present motion. Alternatively, the plaintiff argues that the prior decision by the court denying the defendant's CT Page 1225 motion to strike; Cumberland Farms, Inc. v. Groton, Superior Court, judicial district of New London at New London, Docket No. 539192 (March 16, 1999, Martin, J.); is the law of the case, barring the defendant from making the same argument in the present motion that the plaintiff's financial problem arises out of the state and federal regulations, and not the zoning regulations of the defendant town.
The court finds no merit in the plaintiff's argument here. With regard to a motion to strike a legal claim, the only issue is whether the allegations are sufficient to support the claim. See Practice Book §10-39(a).[2] In its prior motion to strike, the defendant challenged the legal sufficiency of the allegations made in the plaintiff's complaint, arguing that "the complaint, as a whole, fails to state a claim upon which relief can be granted." Specifically, the defendant argued that "the plaintiff fails to allege that the defendant's zoning regulations, as applied to the plaintiff's property, prevent the plaintiff from making `any use or a feasible use of the property.'" This court disagreed, noting that the plaintiff had alleged in its complaint that "[t]he actions of the defendant town . . . have left the plaintiff without any economically viable and reasonable use of the Property and have destroyed the plaintiff's reasonable economic expectations regarding the use of the Property." Cumberland Farms, Inc. v. Groton, supra, Superior Court, Docket No. 539192. Taking the allegations as true, as it must with regard to a motion to strike, the court concluded that they were "legally sufficient to state a cause of action for regulatory taking or inverse condemnation." Id.[3]
The court's ruling on the defendant's motion to strike was a determination on the sufficiency of the plaintiff's allegations to sustain the legal claim, and not on the merits of the allegations or the claim. With regard to a motion to strike, the court is limited to "a consideration of the facts alleged in the complaint. A `speaking' motion to strike (one imparting facts outside the pleadings) will not be granted. Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345, 348, 576 A.2d 149
(1990); Bulkley v. Norwich W. R. Co., 81 Conn. 284, 286, 70 A.2d 1021
(1908)." Doe v. Marselle, 38 Conn. App. 360, 364, 660 A.2d 871 (1995), rev'd on other grounds, 236 Conn. 845, 675 A.2d 835 (1996); see alsoCavallo v. Derby Savings Bank, 188 Conn. 281, 285-86, 449 A.2d 986
(1982). Likewise, the defendant in its prior motion to strike was bound by the Practice Book rules to challenge only the sufficiency of the plaintiff's allegations, and not the merits of the allegations or of the cause of action. The defendant could not have asserted issue preclusion in the motion to strike because it would have been procedurally improper.
For the reasons discussed above, the court finds no merit in the CT Page 1226 plaintiff's argument under the doctrines of waiver, estoppel, or law of the case.
 II
The plaintiff next argues that the doctrine of issue preclusion is inapplicable because it did not and could not have raised the issue of taking in the administrative proceedings before the board or the court on administrative appeal.[4] The plaintiff argues that in any case the issue of taking was not fully and fairly litigated in the administrative appeal.
"Claim preclusion (res judicata) and issue preclusion (collateral estoppel) have been described as related ideas on a continuum. [C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . .[I]ssue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit." (Internal quotation marks omitted.) Dowling v. Finley Associates, Inc.,248 Conn. 364, 373, 727 A.2d 1245 (1999).
"Both doctrines protect the finality of judicial determinations, conserve the time of the court, and prevent wasteful relitigation . . . and express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." (Citation omitted; internal quotation marks omitted.) Id.
It is significant that, despite its holding that "an administrative appeal pursuant to § 8-8 and an inverse condemnation action are distinct actions that raise distinct claims and seek distinct remedies," the Supreme Court in Cumberland nonetheless contemplates the applicability of the doctrines of claim and issue preclusion to the present case: "To the extent that the issues addressed in the inverse condemnation action overlap the administrative appeal, the parties would be free to request a consolidation of the cases. Alternatively, they may employ the procedural tools of claim and issue preclusion to prevent duplicative litigation of the same issues or claims." Cumberland Farms,Inc. v. Groton, supra, 247 Conn. 217. This observation by the court cautions against any unwarranted broadening or extension of the narrow holding of Cumberland.[5]
The defendant argues that the essential elements of the issue of regulatory taking were raised, litigated, and decided in the prior administrative appeal action. The plaintiff disagrees, arguing that the issue was not presented to either the board or the court and that a determination on the issue of taking was not necessary to the claim of unusual hardship resented before the court. The plaintiff argues further CT Page 1227 that the court hearing the administrative appeal was confined to determining whether the reasons given by the board in its denial of the variance were supported by the record before the court, and that the court in the administrative appeal could not independently make findings of fact.
Specifically, the plaintiff argues that the defendant's motion for summary judgment rests entirely on one single legal theory, that the plaintiff's claim of regulatory taking did not arise from the application of the zoning regulations of the defendant town, but from the state and federal regulations. Even though the court in the administrative appeal reached the same conclusion and emphasized the point several times, the plaintiff argues that the court's conclusion was dictum for not being based on a finding actually made by the board. This court disagrees with the plaintiff's characterization that the defendant's motion rests entirely on the above single legal theory, because the defendant has also relied on other conclusions made by the court that were directly based on the reasons provided by the board in its denial f the variance sought by the plaintiff.
The board gave the following reasons for its denial of the plaintiff's variance request: "No hardship shown. The variance request did not meet the criterion of § 8.5-8B of the Town of Groton Regulations. Proposed expansion to a convenience store in addition to permitted non-conforming gas sales was considered financial. Also applicant is presently makingreasonable use of the property. In addition the applicant purchased the property knowing the nature of the non-conformity." (Emphasis added.) (Decision of the board, May 22, 1996), quoted in Cumberland Farms v.Zoning Board of Appeals, supra, Superior Court, Docket No. 538647.
Section 8.5-8B of the zoning regulations of the defendant town, as quoted in the court's opinion, provides in part: "Before granting a variance on the basis of unusual difficulty or unreasonable hardship, there must be a finding by the Board of Appeals that all of the following conditions exist: 1. That if the owner complied with the provisions of these regulations, he would not be able to make any reasonable use of hisproperty. 2. That the difficulties or hardship are peculiar to the property in question, in contrast with those of other properties in the same district. 3. That the hardship was not the result of the applicant's own action. 4. That the hardship is not merely financial or pecuniary." (Emphasis added.) Cumberland Farms v. Zoning Board of Appeals, supra, Superior Court, Docket No. 538647.
"Review of decisions of local zoning authorities acting within their administrative capacity is limited to a determination, principally on the record before the zoning board, whether the zoning board acted CT Page 1228 illegally, arbitrarily, or in abuse of the discretion vested in it. . . .As we have recently reiterated, when a zoning authority has stated the reasons for its actions, the reviewing court ought to examine the assigned grounds to determine whether they are reasonably supported by the record and pertinent to the considerations the authority was required to apply pursuant to the zoning regulations." (Citations omitted.)Havurah v. Zoning Board of Appeals, 177 Conn. 440, 444-45, 418 A.2d 82
(1979). "The action of the commission should be sustained if even one of the stated reasons is sufficient to support it." (Internal quotation marks omitted.) DeBeradinis v. Zoning Commission, 228 Conn. 187, 199,635 A.2d 1220 (1994). As acknowledged by the plaintiff, the court on administrative appeal correctly applied the same principles.[6]
The court hearing the administrative appeal listed certain facts that were "not in substantial dispute" and supported by the record from the proceedings before the board. At the time of purchase of the property from a previous owner in 1976, the property "had been used as a gasoline service station for the sale of gasoline and for the repair of automobiles." Cumberland Farms v. Zoning Board of Appeals, supra, Superior Court, Docket No. 538647. "Incidental to the operation of the station was the sale of snacks and sundries such as soda, candy and snack foods. This use predates the zoning regulations, and at the time plaintiff acquired title, the property enjoyed the status of a preexisting nonconforming use limited to its prior method of operation." Id. After acquiring the property, the plaintiff terminated the auto repair part of its business. Id. "After terminating repair work, the property was used only for gasoline sales and the incidental sundries. . . ." Id. The plaintiff testified that "income being generated from current use of the property was, at best, barely able to support current operation." Id. "To generate additional income, plaintiff has attempted to expand the items offered for sale but has been prevented from doing so by enforcement of the zoning regulations." Id. "State and federal statutes, as well as regulations of the Department of Environmental Protection (hereinafter DEP), will require plaintiff to upgrade the property by replacing three underground gasoline storage tanks." Id. "This cost could be as high as $343,000. . . ." "Plaintiff contends that the income generated from the sale of gasoline and sundries will not support the additional cost of replacing the tanks. It is claimed that only by varying the application of the zoning regulations and allowing it to use the property in a manner not authorized by [the zoning regulations], that is, as a convenience store with gasoline sales, can the additional costs be absorbed." Id. "Without the variance, plaintiff contends that it can make no reasonableuse of its property." (Emphasis added.) Id.
"The plaintiff has not alleged that the regulations are facially unconstitutional." Cumberland Farms, Inc. v. Groton, supra, 247 Conn. 202
CT Page 1229 n. 7. It cannot claim so because it is undisputed that its property has enjoyed a preexisting nonconforming use under the regulations since the acquisition of the property in 1976.[7] Cumberland Farms v. ZoningBoard of Appeals, supra, Superior Court, Docket No. 538647. The plaintiff's taking claim does not stem from any zoning reclassification or amendment. It is the denial of its variance request, in the plaintiff's view, that has amounted to a regulatory taking. "Specifically, the plaintiff maintains that the board's denial, pursuant to the defendant's zoning regulations, of the variance application operated to deprive the plaintiff of any economically feasible. reasonable use of its property." (Emphasis added.) Cumberland Farms, Inc. v. Groton, supra, 247 Conn. 202.
As the defendant correctly points out, a regulatory taking or inverse condemnation claim is measured by two tests, "practical confiscation" and balancing tests. "While [a]ll property is held subject to the right of government to regulate its use in the exercise of the police power . . . if regulation goes too far, it will be recognized as a taking. . . .In analyzing regulatory action to determine whether it `goes too far,' we are mindful that the difference between a regulation that results in a compensable taking and one that does not generally is a matter of degree. . . .Although at one extreme a regulation may deprive an owner of the beneficial use of property so as to constitute a practical confiscation, thereby requiring compensation . . . if a regulation results in something less than a practical confiscation, the determination of whether a taking has occurred must be made on the facts of each case with consideration being given not only to the degree of diminution in the value of the land but also to the nature and degree of public harm to be prevented and to the alternatives available to the landowner. . . .The financial effect on a particular owner must be balanced against the health, safety and welfare of the community." (Citations omitted; internal quotation marks omitted.) Cohen v.Hartford, 244 Conn. 206, 220-21, 710 A.2d 746 (1998). "The plaintiff may prevail on his claim of a constitutional deprivation if the board's denial of the variance constituted a taking, either as a practical confiscation of his property or by application of a balancing test." Francini v.Zoning Board of Appeals, 228 Conn. 785, 792, 639 A.2d 519 (1994).
"A practical confiscation occurs when a landowner is prevented from making any beneficial use of its land — as if the government had, in fact, confiscated it. A practical confiscation does not occur when the landowner cannot take advantage of a myriad of uses acceptable under the applicable regulations because of choices the landowner itself has madethat limit its land use options." (Emphasis added.) Bauer v. WasteManagement of Connecticut, Inc., 234 Conn. 221, 256, 662 A.2d 1179
(1995). On the other hand, under the balancing test, which requires the weighing of private and public interests; Keystone Bituminous Coal Assn.CT Page 1230v. DeBenedictis, 480 U.S. 470, 492, 107 S.Ct. 1232, 94 L.Ed.2d 472
(1987); a taking claim may lie "if use of property is severely restricted and its profitability greatly reduced as a result of the action of the government." Citino v. Redevelopment Agency, 51 Conn. App. 262, 278-79,721 A.2d 1197 (1998), citing Laurel, Inc. v. Commissioner ofTransportation, 180 Conn. 11, 46, 428 A.2d 789 (1980). Even though falling short of "practical confiscation," that is, "total deprivation of property rights," there is a regulatory taking if the property is deprived of any "reasonable and proper use." Citino v. Redevelopment Agency, supra, 51 Conn. App. 277-78, citing Luf v. Southbury, 188 Conn. 336,342, 449 A.2d 1001 (1982).
Even under the balancing test, however, the plaintiff's taking claim must necessarily fail if the plaintiff fails to show that the existing zoning regulations have deprived the property owner of any reasonableuse of the property. Francini v. Zoning Board of Appeals, supra,228 Conn. 792 ("a property owner asserting a regulatory takings claim bears the burden of proving that the relevant government entity will not allow any reasonable alternative use of his property") (emphasis in original); Tamm v. Burns, 222 Conn. 280, 284, 610 A.2d 590 (1992) ("there is no taking in a constitutional sense unless the property cannot be utilized for any reasonable and proper purpose . . . as where the economic utilization of the land is, for all practical purposes, destroyed.") (internal quotation marks omitted); Luf v. Southbury, supra, 188 Conn. 35 1-52 ("[u]nless it appears that the plaintiff has been finally deprived . . . of the reasonable and proper use of the property, it cannot be said that there has been an unconstitutional taking of property without just compensation.") (internal quotation marks omitted). "Before being entitled to judicial review of his takings claim, the plaintiff has the burden of showing that he has been finally deprived by the commission of the use of his property. . . .As a threshold matter, the plaintiff thus bears the difficult burden of proving that the commission will not allow any reasonable use of his property." (Citations omitted; emphasis added.) DeBeradinis v. ZoningCommission, supra, 228 Conn. 197.
It follows that if the court concludes on the basis of sufficient evidence that the denial of a variance application has not deprived the property of any reasonable use, or that the property has any reasonable alternative use under the existing zoning regulations, the plaintiff's regulatory taking claim must necessarily fail. See Francini v. ZoningBoard of Appeals, supra, 228 Conn. 794-95 (affirming the trial court's ruling that the plaintiff failed to prove his taking claim because of his failure to demonstrate that "the board's denial of his application for a variance . . . has deprived him of any reasonable use of his property");A F Construction Co. v. Zoning Board of Appeals, 60 Conn. App. 273, CT Page 1231 279-80, 759 A.2d 101 (2000) (affirming the trial court's denial of the plaintiff's taking claim because the plaintiff failed to sustain its burden of proving that the zoning board would not allow "any reasonable use of its property").
Even though issue preclusion and claim preclusion are "related ideas on a continuum," they are nevertheless distinguishable from each other.Dowling v. Finley Associates, Inc., supra, 248 Conn. 373. "Under the doctrine of res judicata, a final judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim. . . .In contrast, collateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim." (Citation omitted; internal quotation marks omitted.) Id., 373-74.
"An issue is `actually litigated' if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . .1 Restatement (Second), Judgments § 27, comment (d) (1982). An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. F. James G. Hazard, Civil Procedure (3d Ed. 1985) § 11.19. If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta. 1 Restatement (Second), [supra, comment (h)]." (Emphasis in original; internal quotation marks omitted.) Id., 374.
"To assert successfully the doctrine of issue preclusion, therefore, a party must establish that the issue sought to be foreclosed actually was litigated and determined in the prior action between the parties or their privies, and that the determination was essential to the decision in the prior case." (Internal quotation marks omitted.) Id. "For estoppel to apply, the fact sought to be foreclosed by [the] defendant must necessarily have been determined in his favor in the prior trial; it is not enough that the fact may have been determined in the former trial. . . .The defendant has the burden of showing that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." (Internal quotation marks omitted.) Id., 377. "`If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone.' [1 Restatement (Second) of Judgments, § 27, comment (i), p. 259." Id., 378.
The plaintiff in Scalzo v. Danbury, 224 Conn. 124, 617 A.2d 440 (1992) CT Page 1232 argued that "once the court found a basis for upholding the action of the board, it needed to inquire no further." Id., 129; see DeBeradinis v.Zoning Commission, supra, 228 Conn. 199. "As a result, the plaintiff insists, the ruling on the taking issue was not essential to the judgment, and the elements of issue preclusion are not satisfied." Scalzov. Danbury, supra, 224 Conn. 129. Similarly, the plaintiff here argues that because the court in the administrative appeal was limited to a review of the board's decision on the hardship issue, the court's conclusions on other issues, such as the issue of reasonable use, were dicta, for they were not necessary to the court's judgment.
There is no merit in this argument. Because the viability of a taking claim based on the denial of a variance application hinges on whether the denial has deprived the property of any reasonable use, the determination of the issue of deprivation of reasonable use is necessary and essential to the taking claim for purposes of issue preclusion. See Francini v.Zoning Board of Appeals, supra, 228 Conn. 792; Tamm v. Burns, supra,222 Conn. 284; Luf v. Southbury, supra, 188 Conn. 351-52. "We conclude that the ruling on the taking issue was both necessary and essential to the judgment because a finding that a taking had occurred would have required the trial court to sustain the [administrative appeal]." Scalzo v. Danbury, supra, 224 Conn. 131; see also Archambault v. Wadlow,25 Conn. App. 375, 383, 594 A.2d 1015 (1991). (affirming the trial court's judgment sustaining the appeal of the plaintiff from the zoning board's denial of a variance application). "Here, the board asserts that the proposed structure would create a safety hazard and would adversely impact the character of the neighborhood. These concerns, however, are outweighed by the fact that the board's denial of a variance constitutes a practical confiscation. . . . As the trial court pointed out, the record does not indicate any reasonable use for the land other than for the construction of a single-family home. Thus, without variance from the setback requirements enabling the plaintiffs to build the dwelling, the value of the plaintiffs' land is significantly diminished. Because there are no alternative uses for the plaintiffs' property, the board's action amounts to a practical confiscation." (Emphasis added.) Archambault v.Wadlow, supra, 25 Conn. App. 383. "The purpose or function of variances or exceptions. also, is to protect zoning legislation from constitutional attack, on the ground that such legislation may in some instances result in confiscation of property, as well as to protect the constitutionality of land use classifications." 101A C.J.S. 663, Zoning and Land Planning § 232 (1979).
Furthermore, there is a substantial overlap of the essential elements of the claim of "unusual hardship," or "exceptional difficulty," which must be shown for a use variance application,[8] and the claim of regulatory taking. "Section 8-6(a)(3) [of the General Statutes] provides CT Page 1233 in relevant part that a zoning board of appeals may `determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusualhardship. . . .' (Emphasis added.)" Reid v. Zoning Board of Appeals,235 Conn. 850, 856-57, 670 A.2d 1271 (1996).
Even though the courts have adopted a case-by-case approach to their determination of "unusual hardship," they have provided some guiding principles. "If the board can reasonably conclude that a zoning regulation practically destroys or greatly decreases the value of a specific piece of property, it may vary the terms of the regulation, provided, of course, that the variance does not materially impair the effectiveness of the zoning regulations as a whole, and provided, further, that the board's action promotes substantial justice." (Emphasis added). CulinaryInstitute of America, Inc. v. Board of Zoning Appeals, 143 Conn. 257,262, 121 A.2d 637 (1956). "To justify the grant of a variance, the hardship must be substantial, and similarly, the hardship must be shown to be serious, real, and of compelling force, as distinguished from reasons of convenience, profit, or caprice. By way of a guiding principle, it may be said that a variance should be granted where, and only where, the application of the regulation in question to particular property greatly decreases or practically destroys its value for anypermitted use, so as to deprive the owner of the land of all beneficial use of the land. Also, a variance should be granted only where such application bears so little relationship to the purposes of zoning that, as to the property in question, the regulation is in effect confiscatory, arbitrary, or capricious, or constitutes an unnecessary, unwarranted, or unjust invasion of, or interference with, a fundamental right of property." (Emphasis added.) 101A C.J.S. 704-706, Zoning and Land Planning § 242 (1979). "A variance cannot be granted unless a situation arises where reasonable use cannot be made of the property in a manner consistent with zoning regulations." (Emphasis added.) Id., 692, § 239. "[T]he test is not whether the proposed use of the property by its owner is more desirable or even the best use, but whether the property may be used in a reasonable manner within the restrictiveprovision of a zoning ordinance or regulation." (Emphasis added.) Id. The denominator common to both the "unusual hardship" and the regulatory taking claims is that the challenged zoning regulations must have deprived the property of any reasonable use to warrant the sufficiency of either of the claims. See Culinary Institute of America, Inc. v. Board ofZoning Appeals, supra, 143 Conn. 262; Francini v. Zoning Board ofCT Page 1234Appeals, supra, 228 Conn. 792; Tamm v. Burns, supra, 222 Conn. 284; Lufv. Southbury, supra, 188 Conn. 35 1-52; 101A C.J.S., supra, 704-706.
The plaintiff's argument that Scalzo is distinguishable simply because the plaintiff there "conceded during oral argument that the taking issue had been litigated and determined by a valid and final judgment" is not persuasive. Id., 129. It is not persuasive because it is not necessary for this court to phrase the issue broadly as a taking issue for purposes of issue preclusion. It suffices for this court to consider whether the issue of reasonable use was actually and necessarily raised, litigated and decided in both the proceedings before the board and the court in the administrative appeal because the plaintiff's taking claim is doomed if this court reaches the above conclusion. This court has concluded that the determination of the issue of reasonable use is necessary to a taking claim. This court examines next whether the issue of reasonable use was actually raised, litigated and decided in the proceedings before the board and the court in the administrative appeal.
There is ample evidence showing that the issue was raised, litigated and decided in both proceedings. In its land use application for a variance, dated April 2, 1996, the plaintiff identified the claimed non-financial hardship as follows: "As the site was a gasoline station long before it was rezoned as RS-12, and will continue as a commercial use, Cumberland Farms cannot enjoy reasonable use of the existingbuilding without a limited use variance." (Emphasis added.) (Defendant's Exhibit 1 to the present motion.) At the public hearing before the board on May 8, 1996, the plaintiff repeatedly asserted that the enforcement of the zoning regulations of the defendant town, combined with the state and federal regulations, had deprived its property of any reasonable use[9]
and had thereby virtually destroyed, and confiscated or "taken" the property from the plaintiff.[10] For instance, Timothy Bates, the plaintiff's attorney, asserted at the public hearing that "the historic, unique use of this property, combined with the effect of the state regulations . . . which mandate this massive expenditure of money combined with your zoning regulations, put us in a position where we believe this property has no useful use, no use at all. In fact, I think Mr. Silverstein [plaintiff's appraiser] will convince you that it's virtually taken from the company unless we can get some relief." (Emphasis added.) (Transcript of public hearing, May 8, 1996, p. 16.) In the memorandum of law in support of its administrative appeal (plaintiff's administrative appeal brief), the plaintiff acknowledged that "at the hearing [before the board], Cumberland Farms offered expert evidence which established that, by denying Cumberland Farms the right to expand its merchandise to a full range of convenience items, the Zoning Regulations for the Town of Groton greatly decrease and, indeed,practically destroy the value of the property. ROR [Return of Record], CT Page 1235 Transcript, pp. 8-10, 17-20, 33-35." (Emphasis added.) (Plaintiff's administrative appeal brief, p. 5.)
Despite its claim at the hearing that the enforcement of the zoning regulations of the defendant town had worked a practical confiscation or had rendered the property useless, the plaintiff acknowledged it was the state and federal regulations that required it to replace the underground gasoline tanks at great cost and caused it the financial hardship.[11]
The testimony by Michael Kelly, general counsel to the plaintiff, made it clear that the hardship was merely financial: it was not that the plaintiff derived no reasonable use from the property under the defendant's regulations; the plaintiff's complaint was, at bottom, that the current use was not profitable enough to defray the cost of replacing the gasoline tanks mandated by federal and state regulations.[12] Kelly acknowledged that "the motivating factor" for the plaintiff's application for a variance was "the expenditures required" by the federal and state regulations to replace the gasoline tanks. (Transcript of public hearing, May 8, 1996, p. 35.)
On May 22, 1996, the seven members of the board voted unanimously to deny the variance application. They all found that the claimed hardship was merely financial or economic,[13] attributed to the cost of replacing the gasoline tanks,[14] that the hardship was self-caused,[15] and that the property had reasonable use under the challenged zoning regulations.[16]
The plaintiff repeated the allegations of practical confiscation and deprivation of any reasonable use before the court in the administrative appeal and raised the same issues. The plaintiff alleged in part in the appeal: "6. . . .(d) "By denying Cumberland Farms, Inc. the right to expand its merchandise to a full range of convenience items, the zoning regulations greatly decreased or practically destroyed the value of the property. . . . 9. In denying said variance, the zoning board of appeals acted illegally, arbitrarily and in abuse of the discretion vested in it, in a number of ways, including but not limited to: (a) It ignored expert planning evidence to the effect that the property could not be used for any permitted use within the zone and was limited in use, due to its historic gasoline sales, to continued gasoline sales operations; (b) It ignored expert appraisal advice that the regulations of the Department of Environmental Protection mandating tank removal and the Zoning Regulations of the Town of Groton preventing sale of convenience items combined to decrease the value of the property and practically destroy
its value for any of the uses to which it could reasonably be put. . . ." (Emphasis added.)
The parties litigated in the administrative appeal the issues of CT Page 1236 practical confiscation and deprivation of any reasonable use, common to both claims of "unusual hardship" and regulator taking. In the administrative appeal brief, the plaintiff cited case law to show that "[a] regulation which permanently restricts the use of property for any reasonable purpose. . . goes beyond permissible regulation and amounts to a taking" and that the regulatory taking is measured by the "practical confiscation" test and "balancing test." (Internal quotation marks omitted.) (Plaintiff's administrative appeal brief, pp. 20-21.) Immediately after the discussion of regulatory taking, the plaintiff asserted "[i]n the present case, expert evidence illustrates that a variance must be granted in order to avoid an unreasonable, practicalconfiscation of the property." (Emphasis added.) Id. At oral argument in the administrative appeal, counsel for the defendants specifically requested that the court render "a finding that the zoning regulations of the Town of Groton do not greatly decrease or practically destroy the value of the property. That is the practical confiscation that [the plaintiff is] arguing here." (Transcript of oral argument on administrative appeal, September 3, 1997, pp. 10-20.)
The court decided the issues in the administrative appeal. In its memorandum of decision, the court summarized the plaintiff's argument: "Without the variance, plaintiff contends that it can make no reasonableuse of its property." (Emphasis added.) Cumberland Farms v. Zoning Boardof Appeals, supra, Superior Court, Docket No. 538647. While focusing primarily on the issue of "unusual hardship" in connection with the variance application, the court discussed also the issue of regulatory taking, following the plaintiff's assertions of "practical confiscation" or "practical destroying" in the appeal: "It is well settled that an ordinance which permanently restricts the use of property for anyreasonable purpose goes beyond permissible regulation and amounts to a taking. Brecciaroli v. Commissioner of Environmental Protection,168 Conn. 349, 355 (1975); Archambault v. Wadlow, [25 Conn. App. 375,382, 594 A.2d 1015] (1991)." Cumberland Farms v. Zoning Board ofAppeals, supra, Superior Court, Docket No. 538647. Immediately after the presentation of the case law on regulatory taking in the context of a variance application, the court made the following remarks:
"Plaintiff's difficulty, however, arises out of the requirement that the permanent restriction must arise out of the zoning regulations. The hardship which would justify the granting of a variance must originate in the zoning regulations. It must arise directly out of the application of the regulations to circumstances or conditions beyond the control of plaintiff. Pollard v. Zoning Board of Appeals, [186 Conn. 32, 39-40,438 A.2d 1186 (1982)].
"Here, plaintiff has a valid nonconforming use in the property. This is CT Page 1237 a vested right which under the zoning regulations it can continue to enjoy. Petruzzi v. Zoning Board of Appeals, [176 Conn. 479, 483,408 A.2d 243] (1979). Plaintiff can continue the present use of the property for the sale of gasoline and sundries under the regulations.
"Plaintiff's difficulty arises out of the fact that the state and federal regulations will require it to expend a considerable amount of money to continue with gasoline sales. The situation would be the same if the tax authorities, or some other governmental agency, posed regulations which increased the cost of doing business. The zoning regulations permitthe sale of gasoline as a nonconforming use. It is the DEP regulationswhich will cause added expenses." (Emphasis added.) Cumberland Farms v.Zoning Board of Appeals, supra, Superior Court, Docket No. 538647.
The court specifically rejected the plaintiff's argument that unless the variance was granted, the existing zoning regulations would amount to a "practical confiscation," or work a taking. "Other cases reviewed in which the board's denial of variance was overturned by the court do not appear to be on point. For example, in Archambault v. Wadlow, supra,25 Conn. App. 375, it was found that regulations enacted after the creation of a lot constituted a practical confiscation and that a variance should have been granted. The situation here is quite different. Plaintiff can continue to operate in its present statusunaffected by the zoning regulations. It is the DEP regulations which have caused the problem." (Emphasis added.) Cumberland Farms v. ZoningBoard of Appeals, supra, Superior Court, Docket No. 538647.
The court repeated its conclusions that the plaintiff's financial difficulties were not caused by the zoning regulations of the defendant town, but by the state or federal regulations, and that the plaintiff could continue its non-conforming use of the property under the existing zoning regulations. "Here the problem was not caused by the regulations." Id. "Here, the DEP regulations substantially increased the cost of doing business but did not affect the property's status under the zoning regulations." Id. The court also concluded that the claimed financial hardship was self-caused: "Setting aside the overriding factor thatplaintiff's financial problem arises out of the DEP regulations and notthe zoning regulations, plaintiff certainly knew at the time it acquired the property that the petroleum industry was subject to state and federal regulations which could impose additional costs in the conduct of its business. Although it might not have anticipated the magnitude of the expenses, it should have known that it was acquiring nonconforming property with limited commercial potential which could be affected by governmental regulations." (Emphasis added.) Id.
After examining the record, hearing oral argument by both parties, and CT Page 1238 reviewing the briefs by both parties in the administrative appeal, regarding the plaintiff's claims of "unusual hardship," "practical confiscation" or deprivation of the property of "any reasonable use" amounting to a taking, the court concluded that "[t]he Board's findingthat plaintiff could make reasonable use of its property under theregulations is supported by the record. Plaintiff could continue itspresent use although it would have substantial additional expenses from acause outside of the zoning regulations." (Emphasis added.) Id.
This court finds no merit in the plaintiff's argument that except for the conclusion on lack of hardship, the conclusions drawn by the court in the administrative appeal were dicta, for they were unrelated to the court's judgment. The claim of "unusual hardship," like that of unconstitutional taking, embodies several interrelated elements, such as deprivation of any reasonable use and practical confiscation. See 101A C.J.S. 704-706, Zoning and Land Planning § 242 (1979) and cases cited therein. A finding on whether the property has reasonable use under the challenged zoning regulations is necessary and essential to a determination of both claims of unusual hardship; see Culinary Instituteof America, Inc. v. Board of Zoning Appeals, supra, 143 Conn. 262; and regulatory taking. See Francini v. Zoning Board of Appeals, supra,228 Conn. 792; Tamm v. Burns, supra, 222 Conn. 284; DeBeradinis v. ZoningCommission, supra, 228 Conn. 197. Even though a board's decision should be sustained if one of the stated reasons is deemed to be sufficient;DeBeradinis v. Zoning Commission, supra, 228 Conn. 199; it does not follow that the other stated reasons are not necessary or essential to the board's determination or to the court's judgment in the administrative appeal.
This court also finds no merit in the plaintiff's assertion that the court's conclusion was dictum that the DEP regulations, rather than the zoning regulations of the defendant town, required the plaintiff to replace the gasoline tanks at great cost, thereby causing the plaintiff significant economic hardship. The testimony of the plaintiff's experts and witnesses established unambiguously that the DEP and federal regulations mandated the replacement of the gasoline tanks, and that the plaintiff sought a variance to earn enough profits to pay for the replacement cost. The conclusion by the court in this regard followed from the board's finding that the property continued to have reasonable use, the sale of gasoline and sundries under the zoning regulations. The conclusion is amply supported by the record from the administrative proceedings before the board. In addition, the parties fully and fairly litigated this particular issue regarding which regulations, those of the state or of the defendant town, contributed to the plaintiff's alleged economic hardship, before the court in the administrative appeal.[17]
The determination of this particular issue is also necessary and CT Page 1239 essential to the board's decision and the court's judgment in the administrative appeal because the taking action is based on the allegations that it is the enforcement of the defendant's zoning regulations that has worked a practical confiscation and rendered the property with no reasonable use. This court concludes, therefore, that the defendant may foreclose further litigation of the issue on the basis of issue preclusion.
On the basis of the record from the board and administrative appeal proceedings, this court concludes that the issue of reasonable use, among others, arising from the same transaction or factual situation, has been fully and fairly raised, litigated and decided in both of the proceedings between the same parties. The issue has been "actually litigated" for purposes of issue preclusion. Dowling v. Finley Associates, Inc., supra,248 Conn. 374. This court concludes further that the issue is necessary and essential to both the board's decision and the court's judgment in the administrative appeal. See Culinary Institute of America, Inc. v.Board of Zoning Appeals, supra, 143 Conn. 262; Francini v. Zoning Boardof Appeals, supra, 228 Conn. 792; Tamm v. Burns, supra, 222 Conn. 284;DeBeradinis v. Zoning Commission, supra, 228 Conn. 197; Luf v.Southbury, supra, 188 Conn. 35 1-52; Scalzo v. Danbury, supra,224 Conn. 131. The issue has been "necessarily determined" for purposes of issue preclusion. Dowling v. Finley Associates, Inc., supra,248 Conn. 374. The defendant may therefore properly assert issue preclusion in the present motion to foreclose the relitigation of the same issue. See id. This court concludes that issue preclusion applies in the present action to the issue of reasonable use.
In its administrative appeal, the plaintiff relied heavily on Libby v.Board of Appeals, 143 Conn. 46, 118 A.2d 894 (1955) and CulinaryInstitute of America, Inc. v. Board of Zoning Appeals, supra,143 Conn. 257, to support its claim that the board's failure to grant the variance constituted an abuse of discretion. In the administrative appeal, the court concluded that the reliance was "misguided": "The statutory requirement that a variance must be supported by a finding of exceptional difficulty or unusual hardship imposes on the Board the obligation to undertake an extensive factual inquiry before a variance may be granted. Simko v. Ervin, [234 Conn. 498, 506, 661 A.2d 1018
(1995)]. Presumably, the boards in Libby and Culinary Institute ofAmerica, Inc. conducted such an inquiry and considered applicable law. In both of these cases after such inquiry and consideration, the board found that exceptional difficulty or unusual hardship existed and granted the variance. In the present case, the record confirms that the Board carried out the statutorily mandated inquiry mentioned in Simko v. Ervin and found that exceptional difficulty or unusual hardship had not been established. The determination of factual issues are matters within the CT Page 1240 province of the board. Stankiewicz v. Zoning Board of Appeals, [15 Conn. App. 729, 546 A.2d 919 (1988), aff'd, 211 Conn. 76, 556 A.2d 1024
(1989)]. It cannot be found that the board abused its discretion under the law." Cumberland Farms v. Zoning Board of Appeals, supra, Superior Court, Docket No. 538647.
This court concludes that once the issue of no deprivation of reasonable use under the challenged zoning regulations is established, there is no genuine issue of material fact as to the taking claim and that the present action is foreclosed as a matter of law. See Franciniv. Zoning Board of Appeals, supra, 228 Conn. 792, 794-95; Tamm v. Burns, supra, 222 Conn. 284; DeBeradinis v. Zoning Commission, supra,228 Conn. 197; Luf v. Southbury, supra, 188 Conn. 351-52; A FConstruction Co. v. Zoning Board of Appeals, supra, 60 Conn. App. 279-80. The plaintiff has made its best efforts, through testimony of witnesses and experts[18] and able advocacy by its attorneys,[19] to convince the board and the court on administrative appeal that the challenged zoning regulations have deprived its property of any reasonable use. In order to prevail on the merits of the present action for regulatory taking, the plaintiff must carry out the burden of showing that the enforcement of the defendant's regulations has deprived the plaintiff's property of any reasonable use. The plaintiff has done everything it could in an attempt to prove this issue before the board and the court in the administrative appeal. The evidence is overwhelming to support the board's determination, affirmed by the court in the administrate appeal, that the property still has reasonable use under the existing regulations and that the plaintiff sought the variance simply to earn more profits to defray the cost of gasoline tank replacement mandated by the state and federal regulations. The board's determination must be affirmed if supported by sufficient evidence. Francini v. Zoning Board of Appeals, supra, 228 Conn. 791.
To allow the plaintiff to relitigate the essential issues common to both claims of undue hardship and regulatory taking would be tantamount to second-guessing the decision by the board; Schiano v. BlissExterminating Co., 57 Conn. App. 406, 415, 750 A.2d 1098 (2000) ("It is not this court's duty to second-guess the commissioner or the board."); and the judgment by the court on administrative appeal. It would also encourage judge shopping. Carothers v. Capozziello, 215 Conn. 82, 107,574 A.2d 1268 (1990) ("Judge shopping is not to be encouraged and a decent respect for the views of his brethren on the bench is commendable in a judge."). Relitigation of issues, where futile, would also waste judicial resources; Isaac v. Truck Services, Inc., 253 Conn. 416, 423,752 A.2d 509 (2000) ("The conservation of judicial resources is of paramount importance as our trial dockets are deluged with new cases daily."); and harass the defendant. Id., 422 (noting that one of the CT Page 1241 purposes of the doctrine of res judicata is to "provide repose by preventing a person from being harassed by vexatious litigation"). These policy considerations further strengthen the applicability of issue preclusion to the present motion. "[T]he whole premise of collateral estoppel is that once an issue has been resolved in a prior proceeding, there is no further fact finding function to be performed." 50 C.J.S. 33, Judgment, § 779 (1997). "The judicial doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . .Stability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest." Isaac v. Truck Services,Inc., supra, 253 Conn. 422-23. "The purpose of, or policy underlying, issue preclusion, or collateral estoppel, is, as variously stated, to avoid repeated litigation of matters judicially determined. The doctrine is not intended to foreclose a party from putting forth contested factual issues before the court, but rather is intended to bar their submission twice." 50 C.J.S. 338, Judgment, § 780 (1997). The doctrine "is intended to protect litigants from multiple lawsuits, and to promote judicial economy and efficiency." Id. It "is also meant to encourage reliance on adjudications, promote confidence in judgments, avoid inconsistent results, forward the policy of establishing certainty in legal relations, maintain stability of court decisions, and promote comity between state and federal courts." Id., 338-39.
For all the reasons discussed above, this court concludes there is no genuine issue of material fact as to the essential issues of regulatory taking in the present action on the basis of issue preclusion. This court finds that the plaintiff has failed to demonstrate the existence of genuine issues as to the facts of no deprivation of any reasonable use under the challenged zoning regulations and the source of claimed financial hardship experienced by the plaintiff. Because there is no genuine issue as to those facts and those issues or facts have been decided against the plaintiff by the board, supported by ample evidence and affirmed by the court in the administrative appeal, the plaintiff's taking claim is foreclosed and the defendant is entitled to judgment in its favor as a matter of law. See Practice Book § 17-49.
The defendant's motion for summary judgment is granted.
Martin, J.